Albert E. DETILLO and Elizabeth R. Detillo

v.

J. R. MOORE FARM SUPPLY, INC.

Civ. A. No. 77–1005.

United States District Court, W. D. Pennsylvania.

May 2, 1978.

Michael J. Murphy, Munhall, Pa., for plaintiffs.

Anna Belle Jones, Mercer, Pa., for defendant.

## OPINION

ROSENBERG, District Judge.

In this action, the plaintiffs, Albert E. Detillo and Elizabeth R. Detillo, filed under Federal Rule of Civil Procedure 56 for summary judgment on the ground that there is no genuine issue as to any material fact, and as such, the plaintiffs are entitled to judgment as a matter of law.

The plaintiffs filed the complaint against the defendant, J. R. Moore Farm Supply, Inc., for violation of the Federal Truth-In-Lending Act, 15 U.S.C. § 1601 et seq. and the Federal Reserve Regulation Z, 12 C.F.R. 226.1 et seq. Jurisdiction is based upon 15 U.S.C. § 1640(c). At the argument in this case, after notice to both parties, only the plaintiffs' counsel appeared.

The plaintiffs aver that the defendant, doing business in the City of Mercer in the Western District of Pennsylvania, regularly extended, offered to extend or arranged to extend credit to its customers and imposed a finance charge on such credit; that on or about May 20, 1977, the plaintiffs and the defendant entered into a contract for the purchase of machinery on a credit basis; that during the course of the overall transaction, the defendant failed to comply with the Act and Regulation by (a) failing to disclose the deferred payment prices in violation of Regulation Z, 226.8(c)(8)(ii); (b) failed to include the finance charge, premiums for credit, life, accident and health insurance charges in violation of Regulation Z, 226.4(a)(5); and (c) failed to clearly and accurately disclose the amount or method of computing the amount of any default, delinquency or similar charges payable in the event of late payment, in violation of Regulation Z, 226.8(b)(4); and as a result of such violations the plaintiffs claim damages in the sum of $1,000, plus costs and Attorney's fees.

The defendant in its answer alleged that the deferred payment price (No. 9) is equal to the addition of the figures set forth in Nos. 1, 4, 5, and 7; that the finance charge is set forth in No. 7 but that the insurance charge is not a part of the finance charge because it is set forth on the financing statement and is not mandatory, but that it will be included in the amount to be financed; that the amount or method of computing late charges is three-fourths the way down the page under No. 5; and that the

defendant has committed no violations under the Act and Regulation Z.

In answer to the interrogatories the defendant indicated that the disclosure statements "would be reviewed by an officer of the Loan Department of the Northwest Pennsylvania Bank and Trust Company at their Mercer office prior to accepting the security Agreement".

For the purpose of this motion, the plaintiffs contend only that the defendant failed to accurately disclose the "deferred payment price" in violation of the Truth-In-Lending Act and Regulation Z, and that the defendant's violation is obvious on its face and is such an inaccuracy sufficient to trigger the civil liability provision of the Act.[1] The defendant, on the other hand, contends that the incorrect disclosure is merely an unintentional clerical error, and as such, exempts the defendant from any civil liability under 15 U.S.C. § 1640(c).

■ The disclosure terminology requirements set out by the Federal Reserve Board in Regulation Z are mandatory and their imposition is within the broad authority granted the Board under the Truth-In-Lending Act. *Richardson v. Time Premium Co.* (D.C.Fla.1971) CCH Consumer Credit Guide, §§ 99.272, 99.273. The terminology required is specified in the various sections of Regulation Z applicable to each type of credit extension. Under the Act, a violation is deemed to have occurred upon any non-compliance with the Act's precise, technical requirements (e. g. mandatory disclosures, proper identification of terms), and such a violation takes place even if the creditor acts in good faith, without any purpose to mislead, and even without detrimental reliance on the part of the consumer.[2]

The defendant readily admits that as to this issue of violation, there is no dispute on the retail sales agreement prepared by the

defendant since the required disclosures were numbered in sequence and disclosure No. 9, the deferred payment price, is incorrect.

■ However, the Act makes available to a creditor a defense to a charge of violation of the disclosure requirements of the Act. That defense is found in 1640(c) as follows:

*"No liability for unintentional error under certain circumstances.* A creditor may not be held liable in any action brought under this section for a violation of this title if the creditor shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adopted to avoid any such error."*

This section provides a two-pronged test. The creditor must first prove that the error was unintentional and bona fide, and second, that procedures reasonably adopted to avoid any such error were consistently maintained. *Turner v. Firestone Tire & Rubber Co.,* 537 F.2d 1296, C.A.5 1976.

■ With this in mind, we examine the document itself. It details in clear and precise form and in meaningful sequence, the required financial information which a buyer would need to be informed of his financial obligations. The "deferred payment price" is a simple arithmetical calculation, representing the original purchase price plus the cost of financing (the finance charge and the cost of insurance). It is obvious that each of the separate ·items comprising the "deferred payment price" was correct as stated, and that these figures were computed incorrectly. Yet anyone reading the statement was provided with the applicable formula and the proper components to arrive at the indicated sum.

In construing 15 U.S.C. § 1640(c) the Seventh Circuit said in *Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161, C.A.7 1974, at page 1167:

---

1. The cases cited by the plaintiffs in support of this proposition *Pollock v. General Finance Corporation,* 535 F.2d 295, C.A.5, 1976 and *LaGrone v. Johnson,* 543 F.2d 1360, C.A.9, 1976 are not apposite since in neither one was the defense of 15 U.S.C. § 1640(c) pleaded.

2. See *Palmer v. Wilson,* 502 F.2d 860, C.A.9, 1974; *Starks v. Orleans Motors, Inc.,* 372 F.Supp. 928 (D.C.La.1974); *Johnson v. Associated Finance, Inc.,* 369 F.Supp. 1121 (D.C.Ill. 1974); *Ratner v. Chemical Bank New York Trust Co.,* 329 F.Supp. 270 (D.C.N.Y.1971).

"The scope of the section was intended to encompass basically only clerical errors . . . the provision was only included in the Senate's bill after complaints were raised that such an act would, in effect, impose strict liability, because clerical and mathematical errors would inevitably result as a consequence of the complexity of the annual rate computations."

The plaintiffs do not challenge the fact that the error was unintentional and bona fide. They do argue, however, that the second part of the exemption has not been met, that the defendant did not maintain procedures reasonably adapted to avoiding such an error.

In this regard the defendant states that it has adopted a form which sets forth all the amounts required by the Act and Regulation Z. The president of the defendant corporation is the man who prepares these statements and in his affidavit states: "I add all amounts and recheck them by adding them a second time."

I cannot be unmindful of the practical realities of a small business. As in any commercial transaction, the extension of credit to the buyer is often the only means by which a seller can effectuate a sale. Usually the transaction takes place on the spot, and for a small operation, the salesman may also wear the hat of the credit manager. Under these circumstances, rechecking the figures used and their computation is often the only preventive procedure available. In *Mirabal v. General Motors Acceptance Corp.*, 537 F.2d 871, C.A.7 1976, the Court, noting that Congress left the exact nature of the prevention mechanism undefined, stated,

"In the face of a showing that procedures containing a rechecking mechanism or other preventative device existed, and were maintained consistently by a creditor, a court could conclude that whatever error occurred was unavoidable and that the Congressional policy of requiring creditors to do everything reasonably possible to avoid disclosure of errors was fulfilled." (at page 879)

When considering a motion for summary judgment, a court is required to resolve all ambiguities and draw all reasonable inferences favorable to the party against whom summary judgment is sought, *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962), bearing in mind that it is the moving party's burden to show an absence of any material factual issue for trial. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Whether or not the plaintiff's violation was an unintentional error is material, and therefore a genuine dispute exists. For this reason, the plaintiff's motion for summary judgment will be denied.