Albert E. THOMKA, Plaintiff,

v.

A. Z. CHEVROLET, INC., Defendant.

Civ. A. No. 78-66.

United States District Court,
W. D. Pennsylvania.

April 16, 1979.

Michael J. Murphy, Munhall, Pa., for plaintiff.

Stephen J. Laidhold, Pittsburgh, Pa., for defendant.

## OPINION

ROSENBERG, District Judge.

The plaintiff, Albert E. Thomka, brings this action for statutory damages against the defendant, A. Z. Chevrolet, Inc., for the alleged violations of the Federal Consumer Credit Protection Act, 15 U.S.C. § 1601 et seq., and Federal Reserve Regulation Z, 12 CFR § 226.1 et seq.

The defendant denying the plaintiff's claims, asserts that it has complied with the applicable provisions of the Federal Consumer Credit Protection Act and the Federal Reserve Regulations.

From all the evidence presented by the parties at the hearing on March 21, 1979, I find that on November 4, 1977, the plaintiff and the defendant entered into a contract for the lease of an automobile; that the agreement was entitled "Non-Maintenance Lease Agreement"; that approximately one

week afterwards, an "Open-End Vehicle Lease Disclosure Statement" was signed by the plaintiff when submitted to him by the defendant, as backdated to November 4, 1977 to correspond with the original lease; and that the plaintiff's brother was the original salesman in this case and represented the seller, but because he was a new salesman he received aid from another employee of the defendant in the make-up of the "Non-Maintenance Lease Agreement" (Plaintiff's Exhibit 1), and which, together with other disclosure statements (Plaintiff's Exhibit 2), the brother took out to the plaintiff's home for the signature of the plaintiff.

In the various charges made by the plaintiff to sustain a claim in this action, he charged that the defendant failed to make the required disclosures prior to the consummation of the transaction in violation of 15 U.S.C. § 1667a and Regulation Z, 12 CFR 226.15(a) in that the defendant failed to disclose the total amount payable under the lease and the term for officials fees, registration, certificate of title and the like, and failed to disclose the total amount of other charges not included in the periodic payments; that it failed to disclose the type and amount of insurance coverage required; that it failed to disclose express warranties or guarantees; that it failed to identify the party responsible for maintaining or servicing the leased property; that it failed to describe any security interest held or to be retained by the lessor appropriately; that it failed to disclose delinquency penalties or late payment charges; that it failed to disclose any option which the plaintiff would have in purchasing the property and under what circumstances; and that it failed to disclose the conditions under which the lessee or lessor could terminate the lease prior to the end of the term.

In all of the evidence presented in this case, I find nothing to give credible support to the charges made by the plaintiff. Since this is a lease contract it comes under Part-E Consumer Leases (New), § 1667a, where the law requires that the lessor shall give the lessee, prior to the consummation of the lease, a dated written statement on which the lessor and lessee are identified setting out accurately in a clear and conspicuous manner the following points:

1. A brief description and identification of the leased property;

2. The amount of any payment by the lessee required at the inception of the lease;

3. The amount payable by lessee for fees, registration, certificate of title, or license fees or taxes;

4. The amount of other charges payable by lessee not included in the periodic payments;

5. A statement of the amount or method of determining the amount of any liabilities the lease imposes upon the lessee at the end of the term and whether or not the lessee has the option to purchase the leased property and at what price and time;

6. A statement relating to all express warranties and guarantees;

7. A description of insurance and payments required;

8. A description of security interest retained by lessor with identification of property;

9. The number, amount and due dates or periods of payments under the lease and total amount of such periodic payments;

10. The lessee's liability for anticipating fair market value; and

11. A statement of conditions for termination of the lease.

The answers for the most part to the plaintiff's contentions appear in Plaintiff's Exhibit 1 and Defendant's Exhibit A, which disclose:

The number, amount and due dates of payments scheduled under the lease and the total amount of such payments are found in paragraphs six, twelve, nineteen and twenty-one of Plaintiff's Exhibit 1 and Defendant's Exhibit A;

The total amount payable by the lessee for official fees, registration, certificate of title, or license fees is found in paragraphs fifteen, seventeen and twenty-six;

The total amount of all other charges are found in paragraph entitled "Summary of Monthly Charges";

The type and amount of insurance coverage is found in the paragraph entitled "Description of Insurance Coverage Obtained by Lessee" and in paragraph twenty-four.

Express warranties are discussed in paragraph thirty-five.

The identification of the party responsible for maintaining the lease property is found in paragraph twenty-five.

The description of any security interest is found in the actual description of the automobile on the top portion of side one.

The consequences for default or late payment are found in paragraphs twenty-two and thirty-two;

The option to purchase the leased property is found in paragraph thirty by way of construction; and

The conditions under which the lessee or the lessor may terminate the lease prior to the end of the lease term are found in paragraph thirty-one.

During the hearing, the defendant offered testimony showing that the Defendant's Exhibit A, which is a copy of the Plaintiff's Exhibit 1, the "Non-Maintenance Lease Agreement" was a document the plaintiff signed approximately one week following the original agreement. It was the plaintiff who neglected to initial the insurance section of the "Non-Maintenance Lease Agreement". However, the number of months, being 24, was left blank. But to these two errors, if errors they be, the plaintiff does not object to their substance but only to the form of late completion. The plaintiff, at the time of leasing and accepting possession before financing could be arranged, knew and agrees that the length of the lease was for 24 months and finds no objection to the type of insurance involved. Thus, in reality, no changes were made between the Plaintiff's Exhibit 1 and the Defendant's Exhibit A. The Plaintiff's Exhibit 2, signed by the plaintiff concurrently with the Defendant's Exhibit A, is not a lease. It is merely a disclosure statement containing essentially all points mentioned in the "Non-Maintenance Lease Agreement". The contract is the same and the plaintiff's duties and rights under the contract are the same.

The statute also provides in § 1640(b) as follows:

"A creditor has no liability under this section for any failure to comply with any requirement imposed under this part or Part E of this subchapter if within fifteen days after discovering an error, and prior to the institution of an action under this section or the receipt of written notice of the error, the creditor notifies the person concerned of the error and makes whatever adjustments in the appropriate account are necessary to insure that the person will not be required to pay a charge in excess of the amount or percentage rate actually disclosed."

While this is evidently an effort on the part of Congress to see to it that no unfair charges may be leveled at a creditor who causes no damage to a consumer, it must be taken into consideration of whether a violation of the Act occurred, when the defendant provided the plaintiff with Exhibit 2 and Defendant's Exhibit A within the week. The law provides additionally under § 1640(c) that

"A creditor may not be held liable in any action brought under this section for a violation of this subchapter if the creditor shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedure reasonably adapted to avoid any such error."

The purpose of the Act is stated in the case of *Simmons v. American Budget Plan, Inc.,* 386 F.Supp. 194 (D.C.La.1974). Here the court held that although this Act is designed to protect the consumer and should be interpreted by the courts in light of such purpose, it should not be used to penalize the creditor who has complied with the requirements of this chapter. The question of unintentional violation of the

Act has also been examined in other cases.[1] The case of *Detillo v. J. R. Moore Farm Supply, Inc.,* 449 F.Supp. 559 (W.D.Pa.1978) held that a defense is available to a creditor upon proof that error was unintentional and bona fide and that procedures reasonably adopted to avoid any such error were consistently maintained.

Here, as in *Detillo,* I note that the plaintiff does not challenge the fact that the error was unintentional and bona fide. The plaintiff here is basing his claim purely on strict technical compliance. I repeat here what I said in *Detillo,* at page 562:

"I cannot be unmindful of the practical realities of a small business. As in any commercial transaction, the extension of credit to the buyer is often the only means by which a seller can effectuate a sale. Usually the transaction takes place on the spot, and for a small operation, the salesman may also wear the hat of the credit manager."

In this case we see an even more intimate relationship between the salesman brother of the plaintiff, as he was aided by another employee in the lease preparation. The evidence shows also that no negotiation is finalized until it is sent to the bank who underwrites the loan on the lease, and that that usually takes a week, as it did in this case.

Because the plaintiff required instant possession of the leased vehicle, it would have been impossible for a finance company or the bank, as in this case, to have been able to check the figures on the spot. Still after the figures were checked and the information as originally presented, restated as it was in Plaintiff's Exhibit 2 and the Defendant's Exhibit A, there is no change in figures or information. Thus, here as in *Detillo, supra,* the applicable formula and the proper components of the lease were set out with such clarity as to not mislead the plaintiff even at the moment of his possession of the car on the date when he leased it. *Detillo v. Moore, supra,* at page 561.

It is obvious here that the omission of the period of 24 months in Plaintiff's Exhibit 1 and the requiring of the initialing of the insurance by the plaintiff were factual matters of which the plaintiff had full knowledge prior to entering into the lease on November 4th, and that the plaintiff suffered no damages whatsoever. The evidence shows that the error was bona fide and unintentional, despite procedures adopted to prevent such error and that it was properly and timely corrected. Thus, it was corrected in appropriate time in compliance with the technical requirements of law.

The Findings of Fact and Conclusions of Law are hereby incorporated and made a part of this Opinion in accordance with Federal Rule of Civil Procedure 52.

I find under all the evidence in the case that the defendant provided substantial compliance with the Consumer Leasing Act and the Truth In Lending Act.

Accordingly, judgment will be rendered for the defendant and against the plaintiff.

---

1. *McGowan v. King, Inc.,* 569 F.2d 845, C.A. 5, 1978; *Mirabal v. General Motors Acceptance Corp.,* 537 F.2d 871, C.A. 7, 1976; *Pennino v. Morris Kirschman & Co., Inc.,* 526 F.2d 367, C.A. 5, 1976; *Ives v. W. T. Grant Co.,* 522 F.2d 749, C.A. 2, 1975.