Albert E. THOMKA, Appellant,

v.

A. Z. CHEVROLET, INC.

No. 79–1758.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule
12(6) Dec. 11, 1979.

Decided March 31, 1980.

Michael J. Murphy, Munhall, Pa., for appellant.

Stephen J. Laidhold, Makoroff, Laidhold & Safier, Pittsburgh, Pa., for appellee.

Before ALDISERT, HUNTER and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This case leads us once again to analyze the disclosure requirements of the Truth-in-Lending Act, 15 U.S.C. §§ 1601 *et seq.* (the Act), and the Federal Reserve Board's Regulations, 12 C.F.R. §§ 226.1 *et seq.* (Regulation Z). The district court held that in the original car leasing agreement the defendant had met the disclosure requirements of the Act; and that, alternatively, even if the defendant had breached those disclosure requirements, it was not liable because it had proven two affirmative defenses under Sections 1640(b) and (c), either of which relieved the creditor from liability. Because we find that the defendant did not satisfy the disclosure requirements and did not sustain its burden of proof on the affirmative defenses, we will reverse.

## I. FACTS

The major problem in this case is that when he signed his first agreement with defendant, the plaintiff, Albert Thomka, was not given a form which had the information required by the Act; and that, when he was given a proper form a week later, he was not advised that the first agreement failed to comply fully with the disclosure requirements of the Act. The facts are as follows.

On November 4, 1977 Albert Thomka entered into a two-year agreement with A.Z. Chevrolet (AZ) for the lease of an automobile. The arrangements for the lease were made through Albert's brother, Gary Thomka, who was employed as a salesman for AZ. This was the first time Gary Thomka had handled a leasing agreement, so Gerry Lion, another AZ employee, performed the actual paperwork for the transaction. Unfortunately, Lion was also unfamiliar with the procedures for arranging the financing of lease agreements because he was primarily responsible for the financing of purchasing agreements. He filled out and had Albert Thomka sign a "Non-Maintenance Lease Agreement." He failed, however, to include the number of months of payments in the appropriate box on the form, or the date of the second payment; to have Albert initial the insurance section; and, most importantly, to show to or have Albert sign a separate form, entitled an "Open-End Vehicle Lease Disclosure Statement."

The completed Non-Maintenance Lease Agreement was subsequently forwarded to General Motors for its approval of the financing. General Motors notified AZ that the form did not meet its requirements for financing because the lessee had failed to initial the insurance section, and the due date of the second payment was omitted. At some point and by some method not apparent from the record, officials of AZ also learned that Albert Thomka had not signed a disclosure statement with his lease agreement. Lion telephoned Albert Thomka and informed him that an error had been made in the lease he had signed and that his brother would deliver to him a new lease. App. at 41a, 69a, 72a. Lion stated there was no difference between the two documents or their requirements. *Id.* At trial, Lion testified that he also "had to" have explained that another form had not been signed, though he could not remember the conversation. App. at 72a. He never claimed to have told Albert Thomka anything else about the disclosure form, such as that it was needed to remedy a prior failure to make disclosures in the original agreement. App. at 72a, 85a. Albert Thomka testified that Lion never told him anything about the disclosure form. App. at 41a.

On November 11, one week after the original agreement was signed, Gary Thomka delivered to his brother a second Non-Maintenance Lease Agreement, which was identical to the first except that the number 24 had been inserted in the previously blank space indicating the number of months of lease payments, and the date of the second payment was added. Gary also

delivered for the first time an Open-End Vehicle Lease Disclosure Statement, which Albert Thomka also signed. There was no evidence that Gary was instructed to inform his brother or did inform him that the original agreement failed to conform with the disclosure requirements and that the disclosure statement was intended to remedy this failure.

After some difficulties with maintenance of the vehicle, Albert Thomka sued AZ for damages under the Act. The district court held that the requirements of Section 1667 and its enforcing regulation, Regulation Z, had been complied with "for the most part" in the original agreement, and even if they were not, AZ met the statutory defenses of Sections 1640(b) and (c). 469 F.Supp. 580 (W.D.Pa.1979). This appeal followed.

## II. STATUTORY SCHEME

The Truth-in-Lending Act was passed primarily to aid the unsophisticated consumer so that he would not be easily misled as to the total costs of financing. For when doing business as usual the figures on conditions randomly placed on the traditional form would reveal to the average businessman the true cost of the transaction, but for the inexperienced or uninformed there was the possibility of deception, misinformation, or at least an obliviousness to the true costs which some day they would have to pay. Thus, the Act seeks "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601. *See generally Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 363–69, 93 S.Ct. 1652, 1657–61, 36 L.Ed.2d 318 (1973). The Act mandates that certain disclosures must be made and how they should be made in finance agreements. Enforcement is achieved in part by a system of strict liability in favor of consumers who have secured financing when this standard is not met. 15 U.S.C. § 1640(a). In 1976, the Act was expanded to cover consumer leases like the one involved in this case. 15 U.S.C. § 1667.

Under the statute the Federal Reserve Board is given the authority to promulgate regulations to carry out these provisions. 15 U.S.C. § 1604. Pursuant to this authority the Board has issued several regulations collectively referred to as Regulation Z.

Both the statute and Regulation Z mandate the disclosure of specified information prior to the consummation of the lease agreement. 15 U.S.C. § 1667a; 12 C.F.R. § 226.15(a). The disclosures can be included within the lease agreement itself or on a separate document. 15 U.S.C. § 1667a; 12 C.F.R. § 226.15(a). If the disclosures are made in the leasing agreement itself, they must be made "on the same page and above the place for the lessee's signature." 12 C.F.R. § 226.15(a)(1).

However, Section 1640 of the Act allows a creditor two means for avoiding liability under the Act even though the original agreement does not meet its disclosure requirements.

First, under Section 1640(b),

A creditor has no liability under this section . . . if within fifteen days after discovering an error, and prior to the institution of an action under this section or the receipt of written notice of the error, the creditor notifies the person concerned of the error and makes whatever adjustments in the appropriate account are necessary to insure that the person will not be required to pay a finance charge in excess of the amount or percentage rate actually disclosed.

Secondly, under Section 1640(c),

A creditor may not be held liable in any action brought under this section for a violation of this part if the creditor shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

We must determine here whether the disclosure requirements of the Act were initially violated, and, if they were, whether AZ nevertheless escapes liability because the violations fall under either of the two exceptions.

## III. DISCLOSURE AT CONSUMMATION OF AGREEMENT

The original Non-Maintenance Lease Agreement signed by Albert Thomka on November 4, 1977 did not conform to the disclosure requirements of the Act in countless respects. Only a few of these deficiencies need be outlined here, for it is apparent that the Open-End Vehicle Lease Disclosure Statement, not the Non-Maintenance Lease Agreement, was intended to satisfy the dictates of the Act.

The principal problem is that numerous provisions in the agreement did not comply with the requirements of Section 1667a that mandated disclosures be made in a "clear and conspicuous manner," and of Section 226.15(a)(1) that they appear "on the same page and above the place for the lessee's signature" if included in the actual agreement. The district court ignored the requirement that disclosures be made on the same side of the page and mistakenly assumed that the "clear and conspicuous" requirement was satisfied even though the information had to be gleaned by reference to more than one paragraph of the agreement. For example, the information required by Section 226.15(b)(11) on "whether or not the lessee has the option to purchase the leased property" and at what price and time was found by the district court on paragraph 30 of the lease "by construction." However, that paragraph only discusses the liability of the lessee at the end of the lease for the difference between the vehicle's actual and expected value, and does not state clearly or explicitly whether the lessee can purchase the vehicle at the end of the lease. Moreover, paragraph 30 is on the back of the agreement. Similarly, Section 226.-15(b)(4) requires disclosure of the "total amount paid or payable by the lessee during the lease term for official fees, registration, certificate of title, or license fees or taxes." One must look to four different provisions—paragraphs 8a, 15, 17 and 26—to find the different components of this amount, and paragraph 26 is on the other side of the page. When the consumer must look at four different paragraphs, three with separate and different figures, scattered over two pages, he is not informed of the "total amount paid" in a "clear and conspicuous manner." The "total amount paid" means he does not have to do the addition, but that the total amount is noted in one lump figure. In contrast, the scattered listing of figures in the lease agreement is quite different from the consolidation of such information in a single lump sum figure as defendant later provided it in the Open-End Vehicle Lease Disclosure Statement.

Finally, there are numerous instances where the information mandated by Regulation Z can be found only in paragraphs 22 through 36 on the back of the form. Identification of the party responsible for maintaining the vehicle and the standard of care, as required by Section 226.15(b)(8), appears in paragraph 25. A description of any penalty for late payments or default, as required by Section 226.15(b)(10), appears in paragraphs 22 and 32, respectively. A statement on the lessee's liability for the difference between the estimated value of property and real value at termination of the lease or end of the term, as required by Section 226.15(b)(13), appears in paragraph 30 and 31. A statement on the conditions under which the lessee can terminate the lease, as required by Section 226.15(b)(12), appears in paragraph 31. And a statement or any express warranties or guarantees available to the lessee, as required by Section 226.15(b)(7), cannot be found anywhere, except perhaps in paragraph 35, which notes that the agreement is exclusive.[1] Clearly the Non-Maintenance Lease Agreement did not and was not intended to conform to the requirements of the Act, but rather was supposed to be *accompanied* by a conforming disclosure statement as Section 226.15(a)(2) permits.

The district court evidently concluded that any violations that might exist were minor and therefore did not warrant a find-

---

1. The defendant's contention that these claims were not raised below is without merit. Not only did the plaintiff specifically allege numerous violations of Regulation Z in his complaint, but the district court decision directly addressed these claims.

ing of a statutory violation. We conclude that, in combination, they present a flagrant failure to provide in a clear and conspicuous manner much of the information mandated by the Act and Regulation Z. More fundamentally, even if the errors were minor, the requirements of the Act are not to be ignored. In *Gennuso v. Commercial Bank & Trust Co.*, 566 F.2d 437, 441–42 (3d Cir. 1977), we specifically held that the failure to provide disclosure on the same document, as required under the similar language of Section 226.8(a)[2], violated the Act because there was no distinction between the clear requirement that information be provided on the same side of the page and on the same document. We noted:

> The present case admittedly does not involve egregious misconduct on the part of Commercial Bank. Yet under the terms of the Truth-in-Lending Act and Regulation Z, this Court is constrained to hold as it does in order to vindicate the intent of the Congress and the framers of Regulation Z. Any misgivings about the technical nature of the requirements under the Act or Regulation should be addressed to Congress and the Federal Reserve Board, not to this Court.

*Id.* at 443 (footnote omitted).

In *Dzadovsky v. Lyons Ford Sales, Inc.*, 593 F.2d 538, 539 (3d Cir. 1979), we rejected the position that the Act was not violated if the complainant failed "to claim that she was actually deceived by the alleged inaccuracies or that they related to her inability to repay her debt." We concluded:

> We are unable to accept this rationale because it suggests the requirement of financial loss before a borrower may bring an action. It is clear, however, that such injury need not be alleged. One of the legislative purposes of the Act is to enable borrowers to compare various available credit terms. Any proven violation of the disclosure requirements of the Act is presumed to injure a borrower by frustrating that purpose.

*Id.* (footnote omitted)

*See Grant v. Imperial Motors*, 539 F.2d 506, 510 (5th Cir. 1976) ("once the court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability").[3] Thus, we now must examine whether either of the statutory defenses was satisfied.

## IV. THE BONA FIDE ERROR DEFENSE

■ The bona fide error defense of Section 1640(c) requires the creditor to show "by a preponderance of the evidence" that the violation "was not intentional, and resulted from a bona fide error;" and second, that it occurred "notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

■ However, the first part of the defense—that a "bona fide error" occurred—has been interpreted to require a showing that the error was merely clerical. *See, e. g., McGowan v. King, Inc.*, 569 F.2d 845, 849 (5th Cir. 1978); *Ives v. W. T. Grant Co.*, 522 F.2d 749, 757–58 (2d Cir. 1975); *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1167 (7th Cir. 1974); *Palmer v. Wilson*, 502 F.2d 860, 861 (9th Cir. 1974); *Ratner v. Chemical Bank*, 329 F.Supp. 270, 281–82 and n.17 (S.D.N.Y.1971). The original draft of

---

**2.** Section 226.8(a) states that

All of the disclosures shall be made together on either (1) (t)he note or other instrument evidencing the obligation on the same side of the page and above the place for the customer's signature; or (2) (on) one side of a separate statement which identifies the transaction.

**3.** In *Lauletta v. Valley Buick, Inc.*, 421 F.Supp. 1036, 1040 (W.D.Pa.1976), the court noted:

[M]any of the requirements of the Truth-in-Lending Act are technical in nature, and the Court is not at liberty to deviate from them as it sees fit. Regulation Z unequivocally requires that necessary disclosures shall be written and made together on one document. The drafters of the legislation obviously felt that oral statements by creditors of piecemeal disclosures are not adequate to ensure the consumer's protection. Regardless of the wisdom or validity of that proposition, it is not this Court's prerogative to substitute its own view for that of Congress.

the Act permitted no errors, but, in response to fears that simple clerical mistakes in mathematical calculations of the lease financial charge and annual percentage rate would create unavoidable liability, *see* Hearings on S.5 Before the Subcomm. on Financial Institutions of the Senate Comm. on Banking and Currency, 90th Cong., 1st Sess. 64ff., 226, 374, 426–27, 529, 584, 698 (1967); the affirmative defenses of Section 1640(c), as well as of Section 1640(b), were added. *See Ratner v. Chemical Bank*, 329 F.Supp. at 280–81 and n.17 (discussing legislative history). The present failure of the underlying agreement to conform in numerous respects to the requirements of the Act is surely not a "clerical" error and thus does not fall within the exemption of the Section. *See Hinkle v. Rock Springs National Bank*, 538 F.2d 295, 297 (10th Cir. 1976) (not allowing clerical defense where there was a complete failure to disclose in the documents provided); *Palmer v. Wilson*, 502 F.2d at 861 (omission of certain terms in standard agreement not type of clerical error contemplated by Section 1640(c)); *Jumbo v. Nester Motors, Inc.*, 428 F.Supp. 1085, 1086 (D.C.Ariz.1971) (failure of the lessor to give the plaintiff a copy of the lease finance agreement on the day of the sale "is not the kind of clerical error exempted from liability by 15 U.S.C. § 1640(c).")

Even if AZ prevailed on this point, it cannot meet the second part of the requirement that it demonstrate by a preponderance of the evidence that the error occurred "notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." The requirement has been construed strictly by the courts to require that a special system be established to assure that no initial errors occur, and that a checking mechanism be maintained to catch any errors that slip through the system. *Gallegos v. Stokes*, 593 F.2d 372, 376 (10th Cir. 1979); *Mirabal v. General Motors Acceptance Corp.*, 537 F.2d 871, 876–79 (7th Cir. 1976); *Turner v. Firestone Tire & Rubber Co.*, 537 F.2d 1296, 1297–98 (5th Cir. 1976). In this case, AZ offered no evidence that it took *any* precautions to avoid errors. Both Lion and Gary Thomka were unfamil-

iar with financing consumer leases. Nor was any evidence offered to show that there were any procedures followed in this case or generally to catch any errors that were made. The review by General Motors of the original Non-Maintenance Lease Agreement was to assure only that that form was properly completed. There was no evidence that General Motors was supposed to or did check to see if a disclosure statement had been completed and the requirements of the Act met.

## V. NOTIFICATION OF ERROR WITHIN 15 DAYS OF DISCOVERY

Nor can AZ avail itself of the Section 1640(c) defense, which exempts the creditor from liability when notification of the error is made within 15 days of its discovery. AZ claims that the delivery to and signature by Albert Thomka of the new disclosure form met this requirement.

There is an initial question, however, whether the notification defense is available when the creditor has used a non-conforming agreement contravening numerous disclosure rules of the Act, rather than simply committed the type of clerical error the courts have applied to Section 1640(c). As noted above, both Sections 1640(b) and (c) were added to the original bill after testimony that simple mathematical errors in calculating annual percentages should not create liability. Section 1640(b) itself states that when a notice of error has been made, the creditor must make "whatever adjustments in the appropriate account [that] are necessary to insure that the person will not be required to pay a finance charge in excess of the amount or percentage rate actually disclosed." The provision thus refers to mathematical, not informational errors generally. Notice in a case such as this where there were informational errors would be ineffectual, since there are no lower mathematical figures on which the remedial cost would be calculated. It is therefore possible that providing exemption under Section 1640(b) in cases like this would provide an incentive for lenders to delay sending disclosure forms until after the agreement is

reached. In *Jumbo v. Nester Motors, Inc.*, 428 F.Supp. 1085 (D.C.Ariz.1971), the court reached a similar conclusion. It held that the belated delivery to the consumer of a required security agreement did not satisfy Section 1640(b). "To apply the exception in Section 1640(b) to this requirement would effectively nullify the regulation," the court concluded, "because lenders would be granted an automatic extension of time not contemplated by the regulations." 428 F.Supp. at 1087.

■ We need not decide this question, however, because there is no evidence that AZ ever notified Albert Thomka that there had been an error of disclosure. Albert Thomka testified that the disclosure statement was never discussed. Lion conceded that he could not remember informing Thomka that information had not been adequately disclosed in the original agreement. He had stated only that there was no difference between the requirements of the old and new lease agreements and perhaps informed him that a new form was being sent. Lion also failed to instruct Thomka's brother to discuss the fact that an error in making clear disclosures had been made. Albert Thomka was never alerted, therefore, to the need to read the second document at all, let alone with care, so as to understand those rights and obligations under the agreement that had not been adequately disclosed before.

### VI.

For the reasons outlined above, we will reverse the decision of the district court holding that AZ is not liable and remand for proceedings not inconsistent with this opinion.