George J. SOLIS, Plaintiff/Appellant,

v.

**FIDELITY CONSUMER DISCOUNT CO., Defendant/Appellee.**

Civ. A. No. 84–2421.

United States District Court, E.D. Pennsylvania.

Feb. 14, 1986.

Bruce Fox, Community Legal Services, Inc., Philadelphia, Pa., for plaintiff.

Lawrence T. Phelan, Philadelphia, Pa., for defendant.

## OPINION

CAHN, District Judge.

Appellant, George J. Solis ("debtor"), appeals under Bankruptcy Rule 8001(a), 11 U.S.C. § 8001(a) (1984), from a decision of the United States Bankruptcy Court for the Eastern District of Pennsylvania granting the motion for summary judgment of Fidelity Consumer Discount Company ("Fidelity"). The Bankruptcy Court found that no genuine material issues of fact existed and decided as a matter of law that Fidelity, while making a consumer loan to debtor, did not violate any provision of the Truth In Lending Act ("TILA") 15 U.S.C.

§§ 1601–1667e (1976).[1] I find that summary judgment was inappropriate on the record before the Bankruptcy Court; therefore, I remand.

## I.

On May 13, 1980, debtor and his wife negotiated with Kutner Buick, Inc. ("Kutner") for the purchase of a 1975 Buick automobile. Kutner accepted debtor's cash deposit of $500 toward the price of approximately $3,259 and gave debtor immediate possession of the car. At that time, Kutner offered debtor assistance to enable him to obtain financing for the approximate balance of $2,759. Kutner transmitted debtor's credit information to Fidelity, who informed Kutner that a co-signer would be necessary before the loan could be consummated. Kutner relayed this information to debtor, who advised Kutner that debtor's mother-in-law would co-sign the loan. Kutner relayed the co-signer's credit information to Fidelity and Kutner then arranged for the interested parties to meet at the Fidelity office on May 21, 1980. At this meeting, loan papers were signed and Fidelity gave a check to debtor. Debtor immediately endorsed the check, giving it to the Kutner representative who had driven debtor, debtor's wife and the co-signer to the meeting. In addition, Fidelity gave the debtor a rescission notice informing him that he had until May 24, 1980, to rescind the entire transaction.

In a disclosure statement also given to debtor on May 21, 1980, Fidelity acknowledged as security for the loan a security interest in debtor's residence and household goods and in the co-signer's residence. Fidelity never disclosed to debtor a security interest in debtor's Buick. Fidelity, however, currently holds a perfected security interest in debtor's 1975 Buick. An issue in this case is whether TILA, in this factual context, required disclosure of the existence of this encumbrance.

On November 19, 1982, debtor filed a voluntary bankruptcy petition under Chapter 13. Fidelity subsequently filed a proof of claim in the amount of $2,136.02 as a secured creditor. On March 3, 1983, debtor notified Fidelity of his intention to rescind the loan transaction, claiming that Fidelity violated the TILA by never notifying him of Fidelity's security interest in the 1975 Buick. On March 8, 1983, Fidelity notified debtor that the loan transaction would not be rescinded since all requirements of the TILA had been met. The parties filed motions for summary judgment, and on April 6, 1984, the Bankruptcy Court granted defendant Fidelity's motion.

## II.

The TILA is a federal statute that provides terms and conditions for the regulation of consumer credit. The congressional purpose of the Act is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601. Congress enacted the TILA to prevent the unsophisticated consumer from being misled as to the cost of financing. *See Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 363–69, 93 S.Ct. 1652, 1657–61, 36 L.Ed.2d 318 (1973); *Griggs v. Provident Consumer Discount Co.*, 680 F.2d 927, 930 (3d Cir.1982), *rev'd on other grounds*, 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982); *Thomka v. A.Z. Chevrolet, Inc.*, 619 F.2d 246, 248 (3d Cir.1980). To accomplish its purpose, the TILA mandates that creditors make certain disclosures. The TILA provides for enforcement of these disclosure requirements through " 'a system of strict liability in favor of consumers who have secured financing when [the] standard[s] [are] not met.' " *Griggs*, 680 F.2d at 930 (quoting *Thomka*, 619 F.2d at 248). Under the TILA, the Federal Reserve Board has the authority to promulgate regulations to carry out the disclosure

---

1. This action is not governed by the Truth-In-Lending Simplification and Reform Act, Pub.L. No. 96–221, 94 Stat. 168 (1980) effective as to transactions after October 1, 1982. The transaction in issue occurred on May 21, 1980.

requirements. 15 U.S.C. § 1604. Pursuant to this authority, the Board has issued a series of regulations referred to as Regulation Z. 12 C.F.R. §§ 226.1 *et seq.* Under the Act and Regulation Z, the specific disclosure requirements differ depending upon whether the transaction in issue is a credit sale or a consumer loan. Disclosure requirements for credit sales are governed by 15 U.S.C. § 1638; 12 C.F.R. § 226.8(b), (c). Disclosure requirements for consumer loans are governed by 15 U.S.C. § 1639; 12 C.F.R. § 226.8(b), (d). A violator of the disclosure requirements is held to a standard of strict liability. Therefore, a plaintiff need not show that the creditor in fact deceived him by making substandard disclosures. *See Dzadovsky v. Lyons Ford Sales, Inc.,* 593 F.2d 538, 539 (3d Cir.1979) (*per curiam*).

### III.

In his motion for summary judgment, debtor alleged several violations of the TILA. Under Rule 56 of the Federal Rules of Civil Procedure, a court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hollinger v. Wagner Mining Equipment Co.,* 667 F.2d 402, 405 (3d Cir.1981) [quoting Fed.R.Civ.P. 56(c) ].

■ First, debtor alleged that Fidelity did not provide to debtor the credit sales disclosures required by 15 U.S.C. § 1638 and 12 C.F.R. § 226.8(c). The Bankruptcy Court, however, correctly held that the transaction between Fidelity and debtor was a consumer loan rather than a credit sale and thus not subject to the disclosure requirements of 15 U.S.C. § 1638 and 12 C.F.R. § 226.8(c).

Second, debtor alleged that Fidelity violated the three-day "cooling off" period the TILA requires when a creditor takes a security interest in the residence of the borrower. The Bankruptcy Court, however, did not address this issue. The TILA and Regulation Z require that whenever a creditor takes a security interest in real property, the borrower has the opportunity to rescind the transaction "until midnight of the third business day following the consummation of the transaction." 15 U.S.C. § 1635(a); 12 C.F.R. § 226.9(a). In addition, section 226.9(c) of Regulation Z mandates that a creditor shall not "disburse any money [until] after the [three-day] rescission period has expired and he has reasonably satisfied himself that the customer has not exercised his right of rescission." 12 C.F.R. § 226.9(c). The purpose of these provisions is to "give the debtor an opportunity to reflect in the quiet of his home before signing an agreement which would create an encumbrance on his home." *Rudisell v. Fifth Third Bank,* 622 F.2d 243, 249 n. 9 (6th Cir.1980).

■ In this action, it is undisputed that Fidelity distributed the loan proceeds to debtor on May 21, 1980, even though the statutory three-day rescission period did not expire until midnight of May 24, 1980. Fidelity argued that despite this distribution, debtor was nonetheless entitled to rescind within the three-day period, return the car to Kutner, and walk away unencumbered. Thus, Fidelity argued, debtor was not injured by receiving the money within the three-day period. This argument, however, does not comport with the legislative intent of the TILA. Even though Fidelity's error in prematurely distributing the loan proceeds might be considered technical, the requirements of the TILA and its regulations cannot be ignored. If even a minor infraction of the TILA is allowed, the TILA would cease to be a strict liability statute. Therefore, once a creditor violates the TILA, no matter how technical the violation appears, unless one of the statutory defenses applies, the court has no discretion in imposing liability. *See Thomka,* 619 F.2d at 250; *Lauletta v. Valley Buick, Inc.,* 421 F.Supp. 1036, 1040 (W.D.Pa.1976). Fidelity has not relied on any of the exclusive statu-

tory defenses of 15 U.S.C. § 1640.[2] Furthermore, those defenses do not appear to shield Fidelity from liability for prematurely distributing the proceeds. Therefore, Fidelity is not entitled to summary judgment.

Third, debtor alleged that Fidelity violated the TILA by failing to disclose Fidelity's security interest in the Buick that debtor purchased from Kutner. Regulation Z provides that in any consumer credit transaction, it is the duty of the creditor to disclose: "A description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates." 12 C.F.R. § 226.8(b)(5). The Bankruptcy Court incorrectly held that absent Fidelity's "causing" the security interest to be taken in the Buick, they could not be held liable for a disclosure violation of the TILA.

█ It is undisputed that Fidelity had a security interest in the debtor's Buick as of July 8, 1980. The security interest was perfected in accordance with the laws of the Commonwealth of Pennsylvania, by notation on the Certificate of Title that Fidelity held a first lien. 75 Pa.Cons.Stat.Ann. § 1132(b). It is also undisputed that Fidelity actually possessed the original Certificate of Title as of July, 1980. Therefore, Fidelity had a duty under Regulation Z to disclose the security interest to debtor,

which it did not. Unless Fidelity can utilize one of the section 1640 statutory defenses, it is liable for violating the TILA. 15 U.S.C. §§ 1640(b), (c), (f). Fidelity did not rely on these statutory defenses, nor did the Bankruptcy Court rely on these defenses. Rather, the Bankruptcy Court found that because Fidelity did not *cause* the creation of the security interest, Fidelity did not violate the TILA disclosure requirements. Causation, however, is not a statutory defense to a TILA violation.

If Fidelity, upon discovering that it possessed the original Certificate of Title, had notified debtor before debtor sent Fidelity the written notice of error, then section 1640(b) would protect Fidelity from liability. However, Fidelity did not discover the error on its own and therefore cannot utilize, nor did they plead, this statutory defense. Additionally, Fidelity neither plead nor produced evidence in support of the "good faith" defense of section 1640(f).

Furthermore, Fidelity cannot rely on the 1640(c) defense because Fidelity did not show that its non-disclosure error occurred unintentionally, despite the maintenance of procedures designed to avoid such an error. In this regard, a Vice President of Fidelity submitted an affidavit which stated that Fidelity did not record, or request to be recorded, a security interest in debtor's Buick. The affidavit, however, neither stated that Fidelity had any procedures de-

---

**2.** Section 1640(b) provides in relevant part:
A creditor has no liability under this section ... if within fifteen days after discovering an error, and prior to the institution of an action under this section or the receipt of written notice of the error, the creditor notifies the person concerned of the error and makes whatever adjustments in the appropriate account are necessary to insure that the person will not be required to pay a charge in excess of the amount or percentage rate actually disclosed.
Section 1640(c) provides in relevant part:
A creditor may not be held liable in any action brought under this section for a violation of this subchapter if the creditor shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the mainte-

nance of procedures reasonably adapted to avoid any such error.
Section 1640(f) provides in relevant part:
No provision of this section ... imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board or in conformity with any interpretation or approval by an official or employee of the Federal Reserve System duly authorized by the Board to issue such interpretations or approvals under such procedures as the Board may prescribe therefor, notwithstanding that after such act or omission has occurred, such rule, regulation, interpretation, or approval is amended, rescinded, or determination by judicial or other authority to be invalid for any reason.

signed to avoid the error, nor that the error was unintentional.

■ Because the movant for summary judgment has the burden of demonstrating the absence of genuine issues of material fact, summary judgment must be denied where the movant's own papers demonstrate the existence of a material factual issue. *Lockhart v. Hoenstine,* 411 F.2d 455, 458 (3d Cir.), *cert. denied,* 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969). I conclude that a genuine issue of material fact exists in regard to Fidelity's intent in obtaining a security interest in debtor's car. The existence of this genuine issue precludes the granting of summary judgment.

■ The Bankruptcy Court also incorrectly concluded that summary judgment was appropriate because debtor failed to submit a contra affidavit to controvert Fidelity's affidavit. Rule 56 requires a response only when the movant has provided the required evidentiary support. *Maldonado v. Ramirez,* 757 F.2d 48, 50 (3d Cir. 1985). If "evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." *Id.,* Fed.R. Civ.P. 56(e) advisory committee note (1963). The Supreme Court has held that even though it is preferable for the non-movant to proffer countering evidence or an affidavit, "the moving party for summary judgment has the burden to show that he is entitled to judgment under established principles and if he does not discharge that burden then he is not entitled to judgment. No defense to an insufficient showing is required." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 161, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142 (1970). To meet its burden, Fidelity's affidavit must satisfy the requirements of Rule 56(e), which provides in relevant part:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to the matters stated therein.

■ Additionally, an affidavit that is "essentially conclusory and lacking in specific facts," is inadequate to shift the burden to the non-movant. *Drexel v. Union Prescription Centers, Inc.,* 582 F.2d 781, 789–90 (3d Cir.1978). Fidelity's affidavit sets forth no admissible evidence to show that Fidelity did not *intend* to have a security interest in debtor's Buick. Fidelity's affidavit was submitted by an officer of the company who did not state that he has any personal knowledge of the transaction. The affiant's affidavit only states a conclusion that his company did nothing wrong.

For the reasons stated above, I will reverse the entry of summary judgment for Fidelity and remand this case to the Bankruptcy Court for further proceedings consistent with this opinion.[3]

---

**3.** Debtor additionally alleged that Fidelity's nondisclosure of its security interest in the Buick is material, and therefore extended the three-day rescission period of section 1635(a) until the creditor disclosed the security interest; limited to three years notwithstanding nondisclosure by the creditor. 15 U.S.C. § 1635(f). I do not reach this issue because my findings on other issues are dispositive.