**NEW MAINE NATIONAL BANK, Plaintiff,**

v.

**John and Elisabeth GENDRON, Defendants.**

**Civ. No. 90-0181 P-C.**

United States District Court,
D. Maine.

Dec. 18, 1991.

---

Thomas A. Cox, Friedman & Babcock, Portland, Me., for plaintiff.

Charles Kadish, Portland, Me., for defendants.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF NEW MAINE NATIONAL BANK

·GENE CARTER, Chief Judge.

This case is based on a dispute arising from a loan transaction that Defendants John and Elizabeth Gendron (hereinafter "Defendants" or "the Gendrons") entered into with old Maine National Bank (hereinafter "OMNB"). The transaction involved a note for $175,619 and a mortgage on the Gendrons' home securing that note. The Gendrons attempted to rescind the transaction on July 9, 1990.

On July 27, 1990, OMNB filed a Complaint in this Court, seeking a declaratory judgment that the Gendrons were not entitled to rescind the transaction, or, alternatively, that any such rescission be conditioned upon the contemporaneous return of the loan proceeds that the Gendrons had received.

The Gendrons responded with a counterclaim, averring that the rescission and disclosure procedures used by OMNB violated certain provisions of the federal Truth-in-Lending Act (hereinafter "TILA" or "the Act"), 15 U.S.C. §§ 1601 *et seq.*, and the Maine Consumer Credit Code (hereinafter "MCCC"), 9–A M.R.S.A. §§ 1–101 *et seq.*, thus enabling the Gendrons to rescind on July 9, 1990 and rendering OMNB liable

for statutory damages as well as other fees and expenses. The Court dismissed the Gendrons' counterclaim without prejudice on June 17, 1991.

With respect to Plaintiff's Complaint, the Gendrons filed a motion for summary judgment on November 1, 1990. On January 6, 1991, subsequent to the filing of Defendants' motion for summary judgment, OMNB was declared insolvent and the Federal Deposit Insurance Corporation (hereinafter "FDIC") was appointed its receiver on that date pursuant to 12 U.S.C. sections 191 and 1821(c). Thereafter, New Maine National Bank (hereinafter "NMNB"), the Plaintiff herein,[1] was created and chartered to perform the function of a "bridge bank" under the statutory format. The bridge bank deals with assets and liabilities of the original bank in the carrying out of the receivership.[2]

A final pretrial conference of the Court and counsel was held on April 30, 1991. Defendants' pending motion for summary judgment was discussed at the conference, and the parties agreed that this matter would be in order for dispositive action on cross-motions for summary judgment after supplemental briefing. Counsel indicated that, in all likelihood, the Court's ruling on the cross-motions for summary judgment would resolve all issues in the case.

After examination of the pleadings, Defendants' original motion for summary judgment, and the supplemental briefing submitted in response to the Court's Final Pretrial Conference and Order, the Court found it inappropriate to resolve the matter on cross-motions for summary judgment. Because of the significant new factual and legal issues generated by Plaintiff's supplemental briefing and affidavit, the Court ordered the parties to file new cross-motions for summary judgment. *See* Procedural Order dated May 23, 1991 at 3–4.

The Court now has before it the Motions for Summary Judgment filed by Plaintiff and Defendants on June 19, 1991. The Court acts on the motions on the basis of the written submissions of the parties.

### I. *Summary Judgment*

A motion for summary judgment must be granted if:

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The Court of Appeals for the First Circuit has articulated the legal standard to be applied in deciding motions for summary judgment:

[T]he movant must adumbrate 'an absence of evidence to support the nonmoving party's case.' *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 [106 S.Ct. 2548, 2554, 91 L.Ed.2d 265] (1986). When that is accomplished, the burden shifts to the opponent to establish the existence of a fact issue which is both 'material,' in that it might affect the outcome of the litigation, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904 [96 S.Ct. 1495, 47 L.Ed.2d 754] (1976), and 'genuine,' in that a reasonable jury could, on the basis of the proffered proof, return a verdict for the opponent. *Anderson*, 477 U.S. at 248 [106 S.Ct. at 2510]; *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988). It is settled that the nonmovant may not rest upon mere allegations, but must adduce specific, provable facts

---

**1.** The Court approved the substitution of NMNB for the original plaintiff on March 29, 1991.

**2.** In other recent cases, the Court has been advised on the record that effective July 13, 1991, the FDIC was appointed Receiver of NMNB by the Controller of the Currency. *Federal Deposit Insurance Corp. v. Doering*, Civ. No. 91–0045–P–C (D.Me. Sept. 11, 1991), at 1 n. 1; *see also New Maine National Bank v. Benner*, 774 F.Supp. 36 at 38 n. 2 (D.Me.1991). In *Doering*, the plaintiff moved to substitute the FDIC for NMNB. In *Benner*, a motion was made for substitution of the FDIC for the nominal plaintiff after the Court had called the situation to the attention of counsel in the case by its aforesaid footnote. No such advice or motion has been placed on record in this case. The Court treats NMNB on this record as the real party plaintiff.

demonstrating that there is a triable issue. 'The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.' *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989). As the Supreme Court has said:

> [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be entered.
>
> *Anderson,* 477 U.S. at 249–59, 106 S.Ct. at 2510–2516.

*Brennan v. Hendrigan,* 888 F.2d 189, 191–92 (1st Cir.1989).

The Court now looks to the supporting papers on the motions and the citations to materials of evidentiary quality in support of the issues that the Court must consider as a basis for its action upon the motion.

## II. *Facts*

The undisputed facts are as follows. In October of 1989, John Gendron approached OMNB in an effort to secure a loan so that he and his brother Richard and their wives could satisfy state and federal income taxes that were due on October 15, 1989.

In order to expedite the immediate needs of Defendants, Plaintiff issued a temporary, unsecured loan in the amount of $275,000 to John Gendron.[3] Several days later, OMNB replaced that unsecured note with two secured notes, one in the amount of $175,619 to John and Elisabeth Gendron, and one in the amount of $100,000 to Richard and Sandra Gendron. The former note forms the basis of this action.

Among the documents provided by OMNB to the Gendrons was a "Notice of Right to Cancel" (hereinafter "Notice"), which they dated and signed. Plaintiff's Complaint, Exhibit C (hereinafter "Ex."). The Notice indicated that their right to rescind the transaction would expire within three business days after occurrence of the last of: (1) the date of the transaction (October 20, 1989); (2) the date on which the defendants received their truth in lending disclosure (October 20, 1989); or (3) the date on which the defendants received the "Notice of Right to Cancel." The bank officer charged with the duty of filling out the Notice for the secured note failed to fill in the date on which the Gendrons' statutory right to rescind expired. That date was never filled in.

On October 24, 1989, the Gendrons signed a document entitled "Confirmation of Nonexercise of Right to Cancel" (hereinafter "Confirmation") in which they acknowledged receipt of their Notice and indicated their intention not to exercise that right. Plaintiff's Complaint, Ex. E.[4] After receipt of this document, Plaintiff disbursed the proceeds of the secured loans to the Gendrons on the same date.

On July 9, 1990, OMNB delivered to the Gendrons another "Notice of Right to Rescind," which designated June 8, 1990 as the expiration date for the Gendrons' right to rescind—a date that had already passed by almost a month when the new document was delivered. Upon receipt of this second Notice, the Gendrons notified OMNB of their decision to rescind the loan transaction.[5] Prior to their attempt to rescind the loan transaction, the Gendrons had informed Plaintiff that they were insolvent.[6]

---

**3.** There is no claim that this initial $275,000 loan to John Gendron gives rise to any issue in this proceeding.

**4.** The Confirmation stated: "Borrower acknowledges that, after waiting three business days, Borrower has not exercised and does not want to exercise the right to cancel the transaction, which right Borrower has under law." Plaintiff's Complaint, Ex. E.

**5.** During his deposition, John Gendron indicated that, on the date of the attempted re-

scission, he did not intend to pay MNB the amount of the loan in exchange for a discharge of the mortgage. He noted that he and his wife did not have the funds to repay the amount of the loan. Deposition of John Gendron at p. 79, lines 3–17.

**6.** The Gendrons stated that they "offered to negotiate their loan relationship with the bank, including the amount due on the note at issue, but the bank refused to negotiate." Statement of Material Facts as to Which There is a Genu-

Defendants never tendered any part of the loan proceeds to Plaintiff, but insisted that Plaintiff take the necessary steps to record the release of its security interest in the loan collateral. Plaintiff did not discharge the mortgage on the Gendrons' home, within twenty days of receiving notification of the Gendrons' decision to rescind or at any time thereafter. Instead, it filed the instant action for declaratory judgment on July 27, 1990.[7]

On September 11, 1991, Defendant John Gendron filed a voluntary petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Maine. *See* Notice of Bankruptcy Filing. MNB filed a petition to lift the stay in the United States Bankruptcy Court, which was granted by the Bankruptcy Court on December 17, 1991.

### III. *Discussion*

#### A.

■ Plaintiff originally sought a declaratory judgment in its Complaint, requesting that the Court "declare that the Gendrons are not entitled to rescind their loan agreement with Maine National" or "order, pursuant to 12 C.F.R. § 226.23(d)(4), that if the Gendrons are entitled to rescind their loan agreement, the return of funds advanced to the Gendrons and the return of collateral received by Maine National must be con-

temporaneous." Complaint at 3. In its subsequent pleadings, however, Plaintiff admits that "in every transaction where 'technical' violations of the rescission notice requirements occur the right to rescind is extended until the violations are cured."[8] Memorandum of Law of Plaintiff in Support of Motion for Summary Judgment at 3 (hereinafter "Plaintiff's Memorandum for Summary Judgment"). In effect, Plaintiff acknowledges that Defendants have a right to rescind the loan transaction. *See* Memorandum in Opposition to Defendants' Second Motion for Summary Judgment at 2–3 (hereinafter "Plaintiff's Memorandum"); Plaintiff's Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment at 1 (hereinafter "Plaintiff's Reply Memorandum").

Plaintiff principally argues that Defendants' rescission of the loan transaction should be conditioned on repayment of the loan proceeds and, alternatively, that Defendants' defenses should be denied on the basis of FDIC-related defenses, namely, the *D'Oench, Duhme* doctrine and its codification in 12 U.S.C. section 1821(n)(4)(I), and the holder-in-due-course doctrine. *See* Plaintiff's Reply Memorandum at 5–6;[9] Plaintiff's Memorandum for Summary Judgment at 3–4; and Plaintiff's Memorandum in Opposition at 17.

---

ine Issue to be Tried, ¶ 3. John Gendron described this "negotiation" as a proposal to MNB's counsel to repay the loan "over a 10–year term, to be paid out of a percentage of ... earnings." Deposition of John Gendron at p. 77, lines 21–22. This proposal was put together by Gendron's counsel and was directed to all of the banks in Portland with which Gendron had loan arrangements. *Id.* at p. 78, lines 8–11. Gendron had a number of loan arrangements with MNB and other Portland banks. *Id.,* lines 1–7.

**7.** Plaintiff specifically set forth in its Complaint the Gendrons' claim to a right to rescind the loan transaction based upon averred violations of the TILA, 15 U.S.C. § 1601, *et seq.,* Regulation Z, 12 C.F.R. § 226.1 *et seq.* (1989), and the MCCC, 9–A M.R.S.A. § 8–101 *et seq.* Complaint, ¶¶ 6, 7, 9, 11 and 12.

Plaintiff also specifically set forth in its Complaint the effect that rescission would have on the mortgage the Gendrons gave OMNB: "Maine National Bank will lose its position as a

secured creditor of the Gendrons ..." Complaint, ¶ 12.

**8.** In Defendants' response to this statement, they note:

While the foregoing is not a correct statement of the applicable law, which extends the right to rescind until three years after consummation of the transaction, not "until the violations are cured", [sic] the difference is not apposite here because the bank's own actions make clear that even it believed that the "technical violations" it had committed had not been cured by July 9, 1990, the date upon which the Gendrons' exercised their right to rescind.

The Gendrons' Memorandum in Opposition to the Bank's Motion for Summary Judgment at 1–2 (hereinafter "Gendrons' Memorandum").

**9.** The pages of Plaintiff's Reply Memorandum were not numbered. The Court has appropriately numbered them so that it can make reference to them as needed.

Defendants argue that they had the right to rescind the loan transaction. They state that:

> By failing to provide the Gendrons with a 'Notice of Right to Cancel' as required by law, the Gendrons' statutory right to cancel remained extant and was validly exercised by them on July 9, 1990—the effect of which was automatically to void the mortgage that they had given to OMNB as part of the loan transaction.

Memorandum in Support of the Gendrons' Second Motion for Summary Judgment at 4 (hereinafter "Gendrons' Memorandum").[10]

The Court concurs with Defendants that they had a right to rescind the loan transaction, based on Plaintiff's violations under the TILA. Both case law and governing regulations support such a conclusion.

Courts have imposed a standard of strict liability under the TILA where a lender has violated any of its provisions. *See, e.g., Griggs v. Provident Consumer Discount Co.*, 680 F.2d 927, 930 (3d Cir.1982) ("[The TILA] mandates the disclosure of certain information in financing agreements and enforces that mandate by 'a system of strict liability in favor of consumers who have secured financing when [the] standard[s] [are] not met.'") (quoting *Thomka v. A.Z. Chevrolet*, 619 F.2d 246, 248 (3d Cir.1980); 15 U.S.C. § 1640(a)). Courts impose such strict liability even where such violations are "merely technical" or "minor." *See, e.g., Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65, 67 (4th Cir.1983); *Jenkins v. Landmark Mortgage Corp.*, 696 F.Supp. 1089, 1095 (W.D.Va.1988); *Solis v. Fidelity Consumer Discount Co.*, 58 B.R. 983, 986 (E.D.Pa. 1986). For example, failure to fill in the expiration date of the rescission form violates the TILA and entitles the borrower to retain the right to rescind the transaction.

*See, e.g., Williamson v. Lafferty*, 698 F.2d 767, 768–69 (5th Cir.1983); *Mayfield v. Vanguard Savings & Loan Association*, 710 F.Supp. 143, 145–46 (E.D.Pa.1989); *Aquino v. Public Finance Consumer Credit Co.*, 606 F.Supp. 504, 507 (E.D.Pa. 1985).

Governing regulations require that the date on which the rescission period expires must be disclosed "clearly and conspicuously" in the "right to rescind" notice. *See* 15 U.S.C. § 1635(a); Regulation Z (hereinafter "Reg. Z"), 12 C.F.R. § 226.23(b); 9–A M.R.S.A. § 8–204. These regulations state that where the creditor has failed to take the necessary actions to start the mandatory three-day rescission period, that period automatically extends until three years after consummation of the transaction. Reg. Z, 12 C.F.R. § 226.23(a)(3); 9–A M.R.S.A. § 8–204(6).

The Court concludes that no genuine issue of material fact exists as to Defendants' right to rescind the loan transaction on July 9, 1990. Both the case law and statutory language are clear and undisputed with respect to extension of the three-day rescission period where the expiration date has been omitted from the notice. It is also undisputed that Plaintiff omitted from the Notice the date on which the rescission period expired. *See* Plaintiff's Answer to Counterclaim, ¶ 5; Plaintiff's Complaint, ¶ 7, Ex. D.

The Court now reaches the issue of whether it should exercise its equitable power to condition rescission of the loan upon repayment of the loan proceeds to Plaintiff. For the reasons that follow, the Court concludes that equity demands such conditioned rescission and, therefore, it will enter summary judgment in favor of Plaintiff.

---

**10.** Defendants allege three truth-in-lending violations:

(1) The date on which the rescission period expired was omitted from the Notice. This is a violation of 15 U.S.C. § 1635(a), Reg. Z, section 226.23(b), and 9–A M.R.S.A. § 8–204[;]

(2) The "Confirmation of Non–Exercise of Right to Cancel" is dated October 24, 1989. OMNB accepted the Gendron's "Confirmation of Right to Cancel" prior to the expiration of the rescission period. This is a violation of 15 U.S.C. § 1635(a), Reg. Z, section 226.23(c), and 9–A M.R.S.A. § 8–204[;]

(3) OMNB disbursed loan funds to the Gendrons before their right to rescind had expired. This is a violation of 15 U.S.C. § 1635(a), Reg. Z, section 226.23(c), and 9–A M.R.S.A. § 8–204.

Gendrons' Memorandum at 7.

## B.

Courts have long held that they have the equitable power under section 1635(b) of the TILA,[11] to condition rescission upon tender of loan proceeds by the borrower. *See, e.g., Rudisell v. Fifth Third Bank,* 622 F.2d 243, 254 (6th Cir. 1980); *Rachbach v. Cogswell,* 547 F.2d 502, 505 (10th Cir.1976); *Powers v. Sims and Levin,* 542 F.2d 1216, 1222 (4th Cir.1976); *La Grone v. Johnson,* 534 F.2d 1360, 1362 (9th Cir.1976); *Palmer v. Wilson,* 502 F.2d 860, 862 (9th Cir.1974). *Cf. Sosa v. Fite,* 498 F.2d 114, 119 (5th Cir.1974) ("[T]he debtor's obligation to restore the creditor to the *status quo ante* was discharged by an offer accompanying notice of rescission, since the creditor within ten days of notification failed to return all monies previously paid by the debtor or to reflect dissolution of the security interest.").[12] Since Congress amended section 1635(b) of the TILA, courts have continued to hold that the statute provides them with the power to condition rescission. *See, e.g., Brown v. National Permanent Federal Savings and Loan Association,* 683 F.2d 444, 447 (D.C.Cir.1982); *Etta v. Seaboard Enterprises, Inc.,* 674 F.2d 913, 919 (D.C.Cir. 1982). In *Brown,* the D.C. Circuit noted that "district courts are to consider traditional equitable notions in applying the statutory grant of rescission." 683 F.2d at 447. The court further noted that Congress had recently amended TILA "so as to make this interpretation even more obvious." *Id.* The *Brown* court concluded that "Congress has therefore explicitly approved the application of equitable principles to the right of rescission granted by the Act." *Id.*[13] Federal regulations also provide courts with the equitable power to condition rescission by reordering the events following the borrower's exercise of his or her right to rescind. *See* 12 C.F.R. § 226.23(d)(4).

Despite this well-established rule regarding conditional rescission, Defendants argue that such rescission is not permissible under the TILA. *See* Gendrons' Memorandum at 12.[14] They interpret the amend-

---

11. Section 1635(b) states in pertinent part:
    When an obligor exercises his right to rescind ... any security interest given by the creditor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor ... shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor....
    As part of the TILA Simplification Act of 1980, Congress added the following sentence to section 1635(b): "The procedures prescribed by this subsection shall apply *except when otherwise ordered by a court*" (emphasis added). Pub.L. No. 96–221, 94 Stat. 132, 175 (codified as amended at 15 U.S.C. § 1635(b)). This amendment applies to any loan consummated after October 1, 1982, the effective date of the TILA Simplification Act.

12. Courts have subsequently distinguished or criticized the holding in *Sosa. See, e.g., Rollins v. Dwyer,* 666 F.2d 141, 144 (5th Cir.1982) ("The state court cited this Court's decision in *Sosa* ... as authority for relieving the obligors of the obligation of tendering the loan proceeds. In view of *Gerasta v. Hibernia National Bank,* 575 F.2d 580 (5th Cir.1978), the correctness of this ruling is doubtful, at best."); *Gerasta v. Hibernia*

*National Bank,* 575 F.2d 580, 584 (5th Cir.1978) ("In *Sosa,* however, the consumer's notice of rescission was accompanied by the consumer's express offer to return the creditor's property."); *Mitchell v. Security Investment Corp.,* 464 F.Supp. 650, 652 (S.D.Fla.1979) ("Since the plaintiffs in the present action never tendered the principal to the defendant, *Sosa* is simply not applicable."); *see also Bustamante v. First Federal Savings and Loan Association,* 619 F.2d 360, 365 (5th Cir.1980).
    Even if the Court applies the holding in *Sosa,* in the instant case, Gendrons' "proposal" to NMB to repay the money borrowed in the loan transaction is distinguishable from that of the debtor in *Sosa.* The Court does not find that, in light of Gendrons' financial situation and universal proposal to all Portland banks with which it had loan arrangements, this proposal constitutes an actual tender offer.

13. The First Circuit has not yet addressed the rescission-forfeiture provisions of 15 U.S.C. section 1635(b).

14. Defendants delineate the three step procedure regarding the borrower's decision to rescind:
    (1) The creditor's security interest in the property securing the loan "becomes void upon such a rescission." 15 U.S.C. § 1635(b); Reg. Z, § 226.23(d); 9–A M.R.S.A. § 8–204(2)[;]
    (2) Within twenty days after receiving the rescission notice, the creditor, among other

ment of section 1635(b) as limiting a court's equitable power to vary the statute's rescission provisions. *Id.* In support of their position against conditional rescission, Defendants cite several cases.[15]

The Court finds these cases unpersuasive. First, the court in *Semar* addressed finance charges and not expiration dates, but noted that "the district court need not rely on equitable powers to alter the procedure. In 1980 Congress amended 15 U.S.C. § 1635(b) to give courts this authority statutorily." 791 F.2d at 706 n. 15. This comment actually supports Plaintiff's position that the statutory language provides courts with the equitable power to condition rescission. Second, the bankruptcy cases cited by Defendants are inapposite because the rulings that bankruptcy courts lack equitable power to condition rescission on return of the loan proceeds is explicitly limited to such courts in those rulings. *See, e.g., Celona,* 98 B.R. at 708; *In Re Gurst,* 79 B.R. at 98. Third, the court in *Rachbach* concluded that "[b]ecause we have an incomplete record, we cannot say that the trial court abused its discretion in the imposition of an equitable condition to the right of rescission." 547 F.2d at 505. This conclusion does not lend any support to Defendants' position. Lastly, the other cases cited by Defendants do not even address

the issue of the Court's equitable power to amend the procedures. *See, e.g., Harris,* 609 F.2d at 123; *Gerasta,* 575 F.2d at 585; *Gill,* 671 F.Supp. at 1026. *Cf. Abbott,* 564 F.Supp. at 1207 ("For the court to fashion the procedures or conditions for rescission in this case, especially in view of the number of plaintiffs involved and their obviously diverse financial conditions, would ... be impracticable and may result in prejudice.").[16]

Defendants also argue that the MCCC clearly prohibits the court from making rescission conditional upon tender of loan proceeds by the borrower. *See* Gendrons' Memorandum at 12. They note that, unlike the TILA, 15 U.S.C. § 1635(b) ("Right of rescission as to certain transactions"), the MCCC, 9–A M.R.S.A. § 8–204(2) ("Right of rescission as to certain transactions"), includes language that states: "If the creditor has delivered any property to the obligor, the obligor may retain possession of it." 9–A M.R.S.A. § 8–204(2). *Id.*

Plaintiff argues that "[i]nasmuch as the language of the MCCC is identical to the TILA, the cases analyzing the TILA can be applied to the MCCC as well." Plaintiff's Memorandum at 4. Although Plaintiff erroneously states that the language is identical,[17] the Court still concurs with its con-

things, must take all necessary actions "to reflect the termination of any security interest created under the transaction."

(3) Upon the performance of the creditor's obligations under the preceding paragraph, the borrower must tender any money or property that has been delivered by the creditor to the borrower.

Defendants argue that courts, in exercising their equitable powers, "may arguably order a procedure whereby the borrower is required to tender loan proceeds (Step 3) prior to or simultaneous with the creditor's return of money or property (Step 2), but may *not* require tender as a pre-condition to discharge of the security interest." Gendrons' Memorandum at 13.

Based on their interpretation of these steps, Defendants conclude that "the first, unavoidable consequence of the borrower's rescission—a consequence that cannot be equitably altered by the courts—is that the secured creditor becomes unsecured." *Id.* at 15. The Court rejects this interpretation.

15. *See, e.g., Semar v. Platte Valley Federal Savings and Loan Association,* 791 F.2d 699, 706 n.

15 (9th Cir.1986); *Harris v. Tower Loan of Mississippi, Inc.,* 609 F.2d 120, 123 (5th Cir.), *cert. denied,* 449 U.S. 826, 101 S.Ct. 89, 66 L.Ed.2d 30 (1980); *Gerasta v. Hibernia National Bank,* 575 F.2d 580, 585 (5th Cir.1978); *Rachbach v. Cogswell,* 547 F.2d 502, 505 (10th Cir.1976); *Celona v. Equitable National Bank,* 98 B.R. 705, 708 (E.D.Pa.1989); *In Re Gurst,* 79 B.R. 969, 978 (Bkrtcy.E.D.Pa.1987); *Gill v. Mid–Penn Consumer Discount Co.,* 671 F.Supp. 1021 (E.D.Pa.1987), *aff'd mem. dec.,* 853 F.2d 917 (3d Cir.1988); *Abbott v. Shaffer,* 564 F.Supp. 1200, 1207 (D.Utah 1983).

16. The Court finds that *Abbott* is also distinguishable from the instant case. Unlike *Abbott,* there is only one plaintiff in this case and the financial conditions are therefore not "diverse." Moreover, *Abbott* is not mandatory precedent for this Court.

17. The MCCC includes a statement absent in section 1635(b): "If the creditor has delivered any property to the obligor, the obligor may retain possession of it." 9–A M.R.S.A. § 8–204(2).

**60**

clusion that the cases analyzing the TILA are applicable to the MCCC. The Court relies in its conclusion upon the almost identical language of the TILA and the MCCC, notwithstanding the latter's additional statement that "[i]f the creditor has delivered any property to the obligor, the obligor may retain possession of it." The MCCC contains the amended TILA language that "[t]he procedures prescribed by this subsection shall apply except when otherwise ordered by a court." Although there is an absence of Maine case law interpreting this section of the MCCC, the Court concludes that this language recognizes the equitable power of courts to alter these procedures. Therefore, the Court's analysis of conditioned rescission under the TILA is applicable to the MCCC.

The Court concludes that both the case law and governing regulations reveal that no genuine issue of material fact exists as to whether the Court has the right to exercise its equitable power in conditioning rescission of the loan upon the return of the loan proceeds under the TILA, this being an issue of law. It concurs as a matter of law with Plaintiff's assessment that the TILA, even in its amended form, provides statutory support for the judicial exercise of such power and does not prevent conditioning of loan rescission upon return of the loan proceeds.

■ In sum, although the Court concludes that Defendants have the right to rescind the loan transaction with Plaintiff, such rescission is subject, in the exercise of the Court's discretion, to being conditioned upon the return of the loan proceeds. The exercise of the Court's discretion will involve factfinding and on this issue there remain genuine issues of material fact.

Accordingly, it is hereby ORDERED that Plaintiff New Maine National Bank's Motion for Summary Judgment be, and it is hereby, GRANTED, on all issues except the fact-dominated issue of the exercise of the Court's equitable discretion to determine if the rescission, on the facts of the case, should be conditioned upon return of

the loan proceeds by the Defendants, which latter issue remains for adjudication.