**Dorothy B. JENKINS, Plaintiff,**

v.

**LANDMARK MORTGAGE CORPORA-TION OF VIRGINIA and Vernon L. Evans, Defendants.**

**Civ. A. No. 88–0173–H.**

United States District Court,
W.D. Virginia,
Harrisonburg Division.

Oct. 4, 1988.

John E. Whitfield, Blue Ridge Legal Services, Inc., Harrisonburg, Va., for Dorothy B. Jenkins.

Vernon L. Evans, Fairfax, Va., pro se, and for Landmark.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This matter is before the court on plaintiff's motion for declaratory judgment under 28 U.S.C. § 2201 (1988). Plaintiff seeks to have this court declare that her

June 22, 1988, rescission of a credit transaction governed by the federal Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et. seq.*, was valid. For the reasons elaborated below, this court finds that the provisions of TILA empower plaintiff to rescind the consumer credit transaction into which plaintiff entered on August 25, 1987.

## I. *Background*

On August 25, 1987, plaintiff and her son went to the law office of W. Dale Houff, Esq., in order to close a consumer credit transaction whereby First American Mortgage and Loan Association of Virginia ("First American") gained a security interest in plaintiff's home. Complaint ¶ 6. On September 4, 1987, plaintiff was notified that defendant Landmark Mortgage had purchased her note and deed of trust from First American. Complaint ¶ 27.

Houff ("the attorney") merely acted as an agent for the original lender in order to complete the closing process and to convey to plaintiff the necessary TILA disclosures. At the closing, plaintiff and her son signed the "Acknowledgement of Receipt" appearing at the bottom of the TILA disclosure statement. The closing attorney testified that it was his usual practice to explain the contents of the disclosure statement to obligors, but that he could not recall the details of that particular transaction. Plaintiff testified that the documents were not explained or summarized to her. The attorney testified that it was his usual practice to ask consumer if they wished to take a copy of the TILA disclosure form with them or to have it mailed to them, along with the other loan documents. Plaintiff testified that neither she nor her son were offered a copy of the disclosure form at the closing but, instead, simply told that a copy would be mailed to them. Regardless of the apparent conflict in the testimony between the attorney and plaintiff, it is clear that plaintiff and her son left the office without the TILA disclosure form in their possession.

Plaintiff did sign, date, and take with her the creditor's copy of the "Notice of Right to Cancel." That notice correctly sets out the three alternate *terminus post quem* events which could establish the expiration date of the consumer's right to rescind the credit transaction. The consumer has the right "to cancel this transaction without cost, within three business days from whichever of the following events occurs last: 1) the date of the transaction, which is August 25, 1987; or 2) the date you received your Truth in Lending disclosures; or 3) the date you received this notice of your right to cancel." As indicated, the transaction occurred August 25, 1987. That is the date plaintiff and son signed the instrument which encumbered her home. Clearly, since plaintiff and son signed the notice of the right to cancel on August 25, 1987, and took it with them that same day, that date must be considered the date upon which condition (3), described *supra,* occurred. The threshold question in this matter is when the effective receipt of the item described in (2) *supra,* the Truth in Lending disclosures, occurred.

Plaintiff was advised that her right to rescind expired on Friday, August 28, 1987, and, further, the attorney testified that he believed that he told her that her notice of rescission would need to be received by the lender by midnight of that date in order to be effective. While in the office on August 25, 1987, plaintiff and her son also signed a "Statement of Non–Rescission," purporting to indicate that plaintiff and her son had not rescinded the transaction as of August 28, 1987. The attorney testified that his normal practice was to offer to have the consumer sign and post-date that document while in his office so that, if they decided not to rescind within that three-day period, they would not need to make an additional trip to his office. His policy in post-dating the "Statement of Non–Rescission" was to void that statement in the event that the creditor consumer exercised his right to rescind in a timely fashion. The closing attorney signed off on this document to the effect that it had been received by him on August 31, 1987.

On August 26, 1987, a complete set of the loan documents, including the TILA disclosure statement, was mailed to plain-

tiff. In addition, a cover letter was enclosed, stating, in relevant part,

> Please let me know if you have any questions and as I discussed with you at closing if you desire to cancel this transaction you must do so by Friday night [August 28, 1987], but that will not mean that you are relieved of all fees or expenses associated with the transaction as it has advanced to this point.

Neither plaintiff nor her son rescinded the transaction before midnight on August 28, 1987.

Plaintiff has admittedly defaulted in her payments on the note. Complaint, ¶ 28. Defendant Evans, as trustee of the Deed of Trust, proceeded to arrange for a foreclosure sale of plaintiff's house and notified plaintiff to that effect by a letter of May 19, 1988. On June 21, 1988, plaintiff, through her counsel, indicated in a letter to defendants that she wished to rescind the transaction of the prior August.

## II. *The Statutory and Regulatory Structure*

The rights which plaintiff seeks to invoke are wholly statutory creatures. The Truth in Lending Act clearly establishes the right of a consumer to rescind the credit transaction within a given time period. 15 U.S.C. § 1635(a) (1982); 12 C.F.R. § 226.23 (1988). The period for rescission is normally that circumscribed by the latest of the series of events listed in the "Notice of Right to Cancel" *supra.* 12 C.F.R. § 226.23(a)(3). However, certain omissions in notification or failures of disclosure can trigger a longer rescission period.

> If the required notice or material disclosures are not delivered, the right to rescind shall expire three years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first.

*Id.;* 15 U.S.C. § 1635(f). Most important for this matter, the statute provides that these rights should be "clearly and conspicuously" disclosed to the consumer. 15 U.S.C. § 1635(a); 12 C.F.R. 226.23(b).

Not only are the statutory provisions extensive in the protection they provide for the consumer, but judicial interpretation of those provisions has only buttressed the paternalistic rationale of the TILA scheme. *See e.g., Sellers v. Wollman,* 510 F.2d 119, 122 (5th Cir.1975). The few cases which seem to undercut or pare back on the borrower's shield of TILA are readily distinguishable from the instant matter on a clear factual basis. For example, when a district court in the Eastern District of Pennsylvania held that there was no violation of the disclosure requirements of TILA, it did so within the context of a transactional history where the mortgagors had the representation of counsel at all stages of the proceeding. *McCarrick v. Polonia Federal Savings & Loan Assn.,* 502 F.Supp. 654, 657 (E.D.Pa.1980).

The protective posture of this legislation is also reflected in the legal standard to which lenders are held. "The purposes of the Act are further demonstrated through a standard of strict liability against creditors who fail to make mandated disclosures." *Curry v. Fidelity Consumer Discount Co.,* 656 F.Supp. 1129, 1131 (E.D.Pa. 1987) (citation omitted). Technical defects in the disclosure process, even the solely oral transmission of information which must be disclosed in writing, are matters of which a court must take cognizance. *Dryden v. Lou Budke's Arrow Finance Co.,* 661 F.2d 1186, 1190 (8th Cir.1981). Such a strict standard of interpretation may well be more Draconian than Solomonic, especially in its effect on lenders. But there can be no doubt that the resemblence in TILA to the regime of Draco was intentional.

## III. *Defects in the Credit Transaction*

First, the court finds that there was a failure of delivery in regard to the TILA disclosure statement. The "Notice of Right to Cancel" was accurate and correctly delivered to plaintiff at the closing on August 25, 1987. Plaintiff was advised orally and in the cover letter of August 26, 1987, that the deadline for rescission was midnight Friday, August 28, 1987. Had proper delivery of all the mandated forms

been made on the day of the closing, August 25, 1987, then plaintiff's right of rescission would have run only until August 28, 1987, because the transaction date, date of delivery of the TILA disclosure materials, and the delivery of the "Notice of Right to Cancel" would all have occurred on August 25, 1987. However, plaintiff did not take the TILA disclosure statement with her and only received it in the mail on or about August 27, 1987.

█ Given the overt, undeniable policy of TILA virtually to force-feed information to the credit consumer and, therefore, reading the relevant statutory provisions as a consistent scheme, it is apparent that "delivery" of the TILA disclosure form only occurred when plaintiff received that form in the mail, not on August 25, 1987, when plaintiff and her son signed the form and returned it to the attorney. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.17(a)(1). On the transaction date, August 25, 1987, plaintiff only signed and returned the original; she did not have a copy she could keep and take with her at that time. Since plaintiff did not receive a copy of the TILA disclosure form she could keep until August 27, 1987, she would have had until August 31, 1987, to rescind.[1]

█ Plaintiff's acknowledgement of receipt of the TILA disclosure statement does not mean that delivery to her of the disclosure statement was effectuated at the date of closing. Acknowledgement of receipt of the TILA disclosure statement creates only a rebuttable presumption of delivery, a presumption which cannot stand in the face of the testimony that plaintiff left the attorney's office without the TILA disclosure form and did not actually receive it in a form she could keep until August 27, 1987. 15 U.S.C. §§ 1635(c); 1641(b), (c).

Furthermore, it is not credible to maintain that plaintiff waived her rescission rights. In order for those rights to have been waived in a legally cognizable fashion, it would have required a more prescient and deliberate process of renunciation than can possibly be recreated from the actual series of events. 12 C.F.R. § 226.15(e).

█ Thus, the oral representations of the attorney and his cover letter of August 26, 1987, advising plaintiff of an August 28, 1987, rescission deadline were erroneous and misled plaintiff regarding the duration of the actual rescission period.[2] Plaintiff was also misinformed in regard to other material aspects of her rights in the transaction under the TILA scheme. The attorney testified he had indicated to plaintiff that, if she were to attempt to rescind the transaction, the lender would have to be notified in writing by midnight, Friday, August 28, 1987. However, the regulations do not require that the lender receive the letter of rescission by midnight of the final day of the rescission period. Instead, the regulations establish that "notice [of rescission] is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business." 12 C.F.R. § 226.23(a)(2). To make even more tediously explicit what is already sufficiently plain, the Federal Reserve Board's Official Staff Interpretation of these regulations explains that "the consumer must place the rescission notice in the mail ... within that period to exercise the right." Official Staff Interpretations, 12 C.F.R. § 226 Supp. I at 285 (1988).[3] Thus, plaintiff was materially misled not only about the actual termination date of the rescission period, but also about what would have had to have taken place within

---

**1.** Sunday, August 30, 1987, would not have counted as a day for measuring the rescission period. 12 C.F.R. § 226.2(a)(6).

**2.** This court wants to take care to note that there is absolutely nothing in the record which indicates or even suggests that any of the misleading statements made to plaintiff were the result of an intent to mislead or confuse. On the contrary, it is clear to this court that Mr. Houff attempted to discharge conscientiously

his responsibilities as closing attorney and this court is convinced that the defects in the transaction were solely the result of inadvertence.

**3.** The Supreme Court has held that "a high degree of deference" is due these "administrative" interpretations of TILA provisions. *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 557, 100 S.Ct. 790, 792, 63 L.Ed.2d 22 (1980).

that period in order for the rescission to be efficacious. The effect of the statements made to plaintiff was that a letter of rescission would have had to have been received by the lender before midnight of the third day of the rescission period, but the rescinding borrower actually need only postmark the rescission letter by that time.

The oral explanation given to plaintiff of what must occur by midnight of the final day of the rescission period (actual receipt of rescission letter by the lender) and the regulation's requirement (posting the rescission letter) substantially differ. The "right" suggested by the oral representations is a toothless creature compared to the rather more robust right contemplated by the regulations. As the regulations describe the right to rescind, one has three full days to reflect upon the transaction and to decide whether to rescind. The ostensible chronology outlined orally to plaintiff hardly would give the would-be rescinder three days. Since, under that interpretation actual receipt by mail is required by midnight of the final day, a consumer cognizant of the inevitable vagaries of postal service would surely feel compelled to act as if he had only one or two days to rescind.[4] The point is that the conflicting oral description of the legal requirements of rescission could lead a borrower to believe that his rescission rights were more severely constricted than they actually are and are a serious, material misrepresentation.

■ Plaintiff was also misinformed regarding the effects of a rescission. The pertinent regulation states that "when a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge." 12 C.F.R. § 226.23(d)(1). The "notice of right to cancel" also informed plaintiff that

> You have a legal right under federal law to cancel this transaction, without cost ... and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

Yet the cover letter of August 26, 1987, told plaintiff that even if she rescinded in a timely manner, the rescission would "not mean that you are relieved of all fees or expenses associated with the transaction as it has advanced to this point." It is unnecessary for the court to investigate thoroughly the subtle and, in this setting, academic, question of whether a credit consumer could still be potentially liable for some expenses incurred outside of the credit transaction which nevertheless were incurred because of that credit transaction. *See* Official Staff Interpretations, 12 C.F.R. 226.26(d)(1). It is evident that the quoted statement is, at best, misleading and effectively contradictory to the pertinent federal regulations, for plaintiff clearly was not liable for expenses incurred within the context of the credit transaction.

### IV. *Consequences of the Disclosure Defects*

■ Lenders are required to "clearly and conspicuously disclose ... to any obligor in a transaction subject to this section the

---

**4.** There are three pertinent responses to those who would argue that a credit consumer could easily avoid the constrictive effects of the chronology represented orally to plaintiff by "stretching" the recission period through the use of a faster medium of written communication. First, the oral interpretation fails to state accurately the law with regard to rescission by telegraph which requires only that the message be filed by the end of the rescission period. 12 C.F.R. § 226.23(a)(2). Second, while a rescinding consumer certainly has the option to employ media other than the mail, it would be disingenuous in the extreme virtually to force them to use such media in order to secure the benefit of the statutorily-created rescission period. After

all, rescission by mail is an option clearly contemplated by the regulations. To require a borrower to choose a more expensive medium of communication in order to be able to have use of a rescission period which is not truncated would be to place a burden on the borrower clearly not envisioned by the regulatory scheme. Finally, to amputate a portion of the rescission period through that sort of misreading of the regulations runs directly counter to the basic rationale for a rescission, "to give the debtor an opportunity to reflect in the quiet of his home" without undue pressure. *Rudisell v. Fifth Third Bank,* 622 F.2d 243, 249 n. 9 (6th Cir.1980); *Curry v. Fidelity Consumer Discount Co.,* 656 F.Supp. 1129, 1131 (E.D.Pa.1987).

rights of the obligor under this section." 15 U.S.C. § 1635(a). If such a clear and conspicuous disclosure is not made, then the rescission period can extend up to three years after the transaction. 15 U.S.C. § 1635(f). Since this court finds that plaintiff was misinformed about the contours of her rights under TILA in several material aspects, the "clear and conspicuous" standard of disclosure was not met and this transaction was subject to the three-year rescission period.

■ One additional question regarding the potential consequences of materially insufficient disclosures must be addressed. Defendants allege that there is no evidence that plaintiff was actually misled or confused by the information disclosed to her. While the record presently before the court does not contain sufficient data for a clear resolution of the defendants' allegation, this allegation, even if true, would be legally irrelevant. The legal inquiry about the quality of disclosure is not directed at whether the credit consumer was actually confused or misled. Nor does it matter whether the consumer would have rescinded the transaction had a "clear and conspicuous" disclosure taken place. The court must engage only in an objective inquiry into the violation of specific provisions of TILA requirements. *Powers v. Sims and Levin*, 542 F.2d 1216, 1219 (4th Cir.1976).

There is no place here for an appeal to a subjective standard of what a given consumer knew, actually found confusing, or even would have done had the disclosure been adequate. The imputed conclusions of counterfactual propositions is a wholly inapposite inquiry in this matter.

■ Furthermore, violations of TILA cannot be explained away as merely "technical" and, thus, *de minimis*. *Mars v. Spartanburg Chrysler Plymouth*, 713 F.2d 65 (4th Cir.1983); *Huff v. Stuart–Gwinn Furniture Co.*, 713 F.2d 67 (4th Cir.1983). In *Mars*, the Fourth Circuit interpreted TILA to require a standard which was both strict and objective. The Fourth Circuit concluded that

We disagree with the district court's analysis that a technical violation of the Act without actual harm imposes no liability.... To insure that the consumer is protected, as Congress envisioned, requires that the provisions of the Act and the regulations implementing it be absolutely complied with and strictly enforced.

*Mars*, 713 F.2d at 67. Therefore, this court need only look to see if there was a violation of the specific disclosure requirements. It is evident to this court that there was such a violation.

## V. *Conclusion*

The conversion of the three-day rescission period into the three-year period for this plaintiff was the result of a sequence of events. Failure to deliver the TILA disclosure statement on August 25, 1987, standing alone, did not convert the rescission period from three days to three years. If delivery of the forms by mail had taken place without the misleading statements of the cover letter or the oral gloss which was provided in addition to that cover letter, then the rescission period would have expired on August 31, 1987. However, in his role as agent for the lender, the attorney conveyed information which contradicted both the statutory and regulatory provisions and the disclosure forms which he transmitted to plaintiff. Since plaintiff was not provided with a clear and conspicuous disclosure of her rights under TILA, the three-year rescission period was operative and plaintiff's rescission of June 21, 1988, was both timely and effective. Plaintiff's motion for declaratory judgment is granted.

An appropriate Order shall this day issue.