In re Martin **LOMBARDI** and Deborah Lombardi, Debtors.

Martin **LOMBARDI** and Deborah Lombardi, Plaintiffs,

v.

**DOMESTIC LOAN AND INVESTMENT BANK, Defendant and Third Party Plaintiff,**

v.

**RHODE ISLAND HOME IMPROVEMENT, INC., Third Party Defendant.**

Bankruptcy No. 94–12727.
Adv. No. 95–1045.

United States Bankruptcy Court, D. Rhode Island.

April 19, 1996.

**570**

Christopher Lefebvre, Pawtucket, RI, for Debtors/Plaintiffs.

Paul T. DiCristofaro, Providence, RI, for Defendant/Third–Party Plaintiff, Domestic Loan and Investment Bank.

Guido R. Salvadore, Providence, RI, for Third–Party Defendant, Rhode Island Home Improvement, Inc.

*DECISION AND ORDER: (1) DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT; AND (2) DETERMINING REAL ESTATE MORTGAGE TO BE VOID*

ARTHUR N. VOTOLATO, Bankruptcy Judge.

The Debtor–Plaintiff and the Third–Party Defendant, Rhode Island Home Improvement, Inc. (RIHII), have submitted this matter to the Court on cross Motions for Summary Judgment. "[S]ummary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law." *Desmond*

v. *Varrasso (In re Varrasso)*, 37 F.3d 760, 763 (1st Cir.1994) (citations omitted). Because there are factual issues in dispute, it would be inappropriate to make a dispositive ruling on the pleadings, and so both Motions for Summary Judgment must be, and are DENIED.

Since evidence has been presented on the issues that are contested, however, a decision on the merits is in order at this time, without further hearing. Having said that, we treat the summary judgment memoranda as trial briefs, and will dispose of the within adversary proceeding on the merits.

At issue are: (1) whether the loan documentation accompanying the September 26, 1992 mortgage given to RIHII violates the Federal Truth in Lending Act, 15 U.S.C. § 1635(a) (TILA); and (2) if so, whether the mortgage should be rescinded and declared void. For the reasons given below, we answer both questions in the affirmative.

### BACKGROUND

On May 13, 1992, the Debtors entered into a home improvement contract with RIHII to install thirteen replacement windows, two roof vents, and six jet vents at their home. (Ex. A to Debtors' Mem. Supp. Summ. J.)[1] The cost of the labor and materials to be provided was $7,462, and the Debtors paid a $262 deposit. The contract indicated a balance due of $7,200, with the words "pending financing" inserted, in handwriting, just before the word "BALANCE." It is agreed that the May 13, 1992 contract does not contain any of the required Federal TILA disclosures. RIHII completed the work in August 1992. On September 26, 1992, the Debtors attended a closing at the offices of RIHII, and executed a "Negotiable Consumer Note and Home Improvement Contract, Security Agreement and Disclosure Statement." They also signed a real estate mortgage to secure the $7,200 balance due under the May 13, 1992 contract.[2] It is agreed that adequate Federal Truth in Lending Disclo-

1. The parties, probably through inadvertence, neglected to offer into evidence a copy of the May 13, 1992 contract. Because both sides have appended and referenced the agreement in their memoranda, we consider said contract to be part of the record.

2. On the same day (September 26, 1992), the mortgage and note were assigned to Domestic Loan and Investment Bank.

sures were provided at the September closing.

The Debtors contend that in May 1992, RIHII agreed to provide financing for the job, that it was therefore required *at that time* to furnish the required TILA disclosures, and that the disclosures given in September 1992 do not relate back to or cure any violation that occurred five months ago, especially in light of the fact that in August 1992, RIHII had fully completed its part of the contract.

It is RIHII's position that the May and September 1992 transactions were separate and unrelated, that in May it contracted only to provide services and materials,[3] and that financing was neither discussed nor contemplated at that time. RIHII contends, in fact, that it did not agree to provide financing until it learned in July that the proceeds of the Domestic Bank loan were not sufficient to pay RIHII under the contract.

### DISCUSSION

In addition to the arguments in support of their dispositive motions for summary judgment, (and possibly in anticipation of the Court's ruling as to said motions), RIHII and Domestic both presented evidence regarding the events in May 1992, and the September 26, 1992 closing.

■ RIHII's president, John A. Aurgemma, contends that his company never agreed to provide financing to the Debtors in May, and that he expected to be paid from the proceeds of a consolidation loan that the Debtors were anticipating from Domestic Bank. This testimony was contradicted by Jerry Galo, RIHII's sales manager, and Jeremiah Ellis, assistant vice president for Domestic Bank.

Galo testified that he met with the Debtors in May, when he advised them to "*first* apply for a loan consolidation to reduce their ratios," and that this would allow RIHII to approve a second loan that would be used to pay for the proposed improvements. He added that the words "pending financing" in the May 13 agreement were included as a

protective mechanism to refund the Debtors' deposit, should their consolidation loan application be rejected. Galo also testified that it was customary for him to take credit applications for RIHII customers and to process them through Domestic Bank.

Jeremiah Ellis testified on behalf of Domestic Bank that he was first contacted by the Debtors in June 1992, regarding a consolidation loan. He stated that this application had nothing to do with the RIHII job, and that the disposition of the proceeds of a Domestic consolidation loan would not have been disclosed to RIHII, in any event. This conflicts with Aurgemma's contention that RIHII started the job only *after* Ellis informed him (Aurgemma) that the Lombardis had received the proceeds from their consolidation loan. Ellis denies that he ever provided such information to RIHII. RIHII's version of what happened is also contradicted by the Debtor, Martin Lombardi, who testified that it was always his understanding that RIHII would finance the job, and that he did not attempt to obtain other financing because Galo told him "they would take care of it."

■ Based on our review of the entire record, we find and/or conclude: (1) that RIHII intended and agreed to provide financing on May 13, 1992; (2) that the contract executed on that date, together with the September 26, 1992 closing, constituted a single transaction; (3) that although required to do so in May 1992, RIHII failed to provide the required disclosures under the Federal TILA 15 U.S.C. § 1635, Regulation Z §§ 226.17 and 226.23; and (4) that by providing disclosures in September 1992, the May 1992 TILA (non-disclosure) violations were not cured. *See Doggett v. County Savings & Loan Co.,* 373 F.Supp. 774, 777 (E.D.Tenn. 1973) (holding that creditor who provided rescission notices after all work was completed on Plaintiffs' homes violated the TILA).

■ As a result of these violations, and pursuant to 15 U.S.C. § 1635, the Debtors' three day right of rescission was extended

---

**3.** It would be interesting to see whether RIHII would take this position if the Lombardis had not

gone through with the September 26, 1992 closing.

for three years,[4] i.e., until either May 13, 1995, three years from the date of the first contractual dealing; or sometime in August 1995, three years from when the work was completed; or September 26, 1995, three years from the date of execution of the note, mortgage, and disclosures. It really doesn't matter which date is the operative one— under *any* scenario the Debtors' request for rescission is timely. Based upon the foregoing, the Debtors' request to rescind the agreement is GRANTED, the mortgage is declared void, *see Perkins v. Mid–Penn Consumer Discount Co. (In re Perkins)*, 106 B.R. 863, 874 (Bankr.E.D.Pa.1989), and judgment should enter for the Debtor–Plaintiffs.

■ Finally, although Domestic Bank and Rhode Island Home Improvement, Inc., would like us to rule on *their* pending dispute in this adversary proceeding, the matter is not ripe for decision on the merits.[5] More to the point, however, is the fact that the resolution of the dispute between Domestic and RIHII will have no effect on the bankruptcy estate, and for that reason, pursuant to 28 U.S.C. § 1334, we will abstain from hearing this unrelated matter, and those parties are authorized to litigate their differences in the appropriate State forum.

Enter Judgment consistent with this opinion.

4. The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first.

12 C.F.R. § 226.23(a)(3) (footnote omitted). *See also French v. Wilson*, 446 F.Supp. 216 (D.R.I. 1978) (holding that right to rescind is continued for three years where lender failed to inform borrowers of 72 hour right of rescission nor made any other effort to cure other disclosure defects).

5. The Third–Party Plaintiff Domestic has filed a Cross Motion for Summary Judgment, which has not been answered by Third–Party Defendant RIHII.