**In re Jaime RODRIGUES and Maria Rodrigues, Debtors.**

**Jaime Rodrigues and Maria Rodrigues, Plaintiffs,**

**v.**

**U.S. Bank, Defendant.**

**Bankruptcy No. 00–11297.
Adversary No. 00–1123.**

United States Bankruptcy Court,
D. Rhode Island.

May 22, 2002.

Christopher M. Lefebvre, Pawtucket, RI, for Debtors/Plaintiffs.

E. Martin Stutchfield, Winograd, Shine & Zacks, Providence, RI, for Defendant.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on the Debtors' Second Amended Complaint against U.S. Bank seeking rescission of a consumer loan and voiding a lien on the Debtors' home, for alleged violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq. and the Home Ownership Equity Protection Act ("HOEPA") amendments to the TILA, 15 U.S.C. § 1639 et seq. An evidentiary hearing was held on the TILA issues, and if they are not successful under Count I, Plaintiffs have requested summary judgment for alleged HOEPA violations (Count II). Factually in dispute is whether the Debtors received two completed copies of the notice of their right to rescind, as required by the TILA and Regulation Z to the TILA, 12 C.F.R. § 226.23(b). For the reasons discussed herein, I find that the Debtors did not receive proper notice of their right to rescind, and that U.S. Bank, as the assignee of the original lender, Firstplus Financial, Inc., is liable for violations of both the TILA and HOEPA.

## FINDINGS OF FACT/CONCLUSIONS OF LAW [1]

Jaime and Maria Rodrigues own as their primary residence, a house at 24 Hill Street, North Providence, Rhode Island. In 1998, after seeing a television commercial featuring Miami Dolphins football luminary Dan Marino promoting First Plus Financial, Inc. ("First Plus"), Maria Rodrigues applied for a consolidation loan which was approved in the amount of $42,025 at an interest rate of 14.99%, in return for a second mortgage on their home. In addition, the Rodrigueses were required to pay First Plus ten points ($4,202.50), plus a document preparation fee, a processing fee, and an underwriting fee.

A closing was held on April 10, 1998, at First Plus's Woonsocket, Rhode Island office. Mrs. Rodrigues testified that she and her husband arrived at the office and waited approximately twenty-five minutes for the First Plus attorney, and while waiting, saw, among other things, "two sets of papers on the desk." One set had yellow "Post-It" notes stuck to various pages, and the other was stamped in red ink "COPY." According to Mrs. Rodrigues, no attorney ever appeared at the closing—only an unnamed female employee, who came in and out of the room several times, and who eventually started to conduct the closing, instructing the Rodrigueses to sign in various places where the "Post–It" notes were placed. Mrs. Rodrigues testified that to kill time she signed very slowly, hoping that during the delay the attorney would arrive; that the unnamed woman never sat down and did not explain any of the documents; and that while she (Rodrigues) did not read each page, the terms of several of the documents were blank when she signed them, anyway.

Mrs. Rodrigues offered into evidence the complete set of papers given to her at the closing, which she said were in the same condition as on April 10, 1998, when she received them. None of the Rodrigueses' documents are signed, and most importantly, the Notice of Right To Cancel is not complete, i.e., it appears as follows:

> You are entering into a transaction that will result in a mortgage, lien, or security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from

---

**1.** This decision contains our findings of fact and conclusions of law made in accordance with Fed. R. Bankr.P. 7052 and 9014.

whichever of the following event occurs last.

    1.   the date of the transaction, which is    ; or

    2.   the date you receive your Truth and [sic] Lending disclosure; or

    3.   the date you receive this notice of your right to cancel.

. . .

If you cancel by mail or telegram, you must send a notice no later than MID-NIGHT of _____.

Notice of Right to Cancel, Joint Exhibits C, D, E, & F.[2]

On cross examination of Mrs. Rodrigues, U.S. Bank produced Exhibits 1 and 2 which are its copies of the Notice of Right to Cancel, one signed by Maria Rodrigues and the other by her husband Jaime. The date filled in on line 1 quoted above is "4–10–98," the date of the closing. The date by which cancellation must occur if by mail or telegram is "MIDNIGHT of 4–14–98." Regarding U.S. Bank's documents, Mrs. Rodrigues stated that her signature was genuine, but could not recall if the dates were filled in when she signed the document. She also stated that the dates are not in her handwriting. U.S. Bank argues that because a signed, completed copy of the Notice of Right to Cancel is in its file, there is a presumption that the Rodrigueses received completed copies of this notice.

### DISCUSSION

#### A. The TILA and Regulation Z [3]

■ 15 U.S.C. § 1635(a) provides in pertinent part:

(a) Disclosure of obligor's right to rescind

Except as otherwise provided in this section, in the case of any consumer credit transaction... in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

15 U.S.C. § 1635(a).

The TILA vests the Board of Governors of the Federal Reserve Board with broad power to promulgate regulations regarding the interpretation and implementation of the Act. See 15 U.S.C. § 1604(a), and in *Mourning v. Family Publications Serv.,* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973), the Supreme Court upheld this delegation of authority. The Federal Reserve Board regulations set forth at 12

---

**2.** There are four copies of this document, two for each borrower, all of which are blank as to dates.

**3.** The TILA and Regulation Z apply to this consumer credit transaction.

CFR Part 226, are commonly known as "Regulation Z,"[4] which requires that in a TILA/HOEPA loan the creditor must "deliver 2 copies of the notice of the right to rescind to each consumer" and that notice of the right to rescind has not been delivered unless it contains several specific statements including "[t]he date the rescission period expires." Regulation Z § 226.23(b)(1) and (b)(1)(v).

Courts have imposed a standard of strict liability under the TILA where a lender has violated any of its provisions. *See, e.g., Griggs v. Provident Consumer Discount Co.*, 680 F.2d 927, 930 (3d Cir. 1982) ("[The TILA] mandates the disclosure of certain information in financing agreements and enforces that mandate by 'a system of strict liability in favor of consumers who have secured financing when [the] standard[s][are] not met.'") (*quoting Thomka v. A.Z. Chevrolet*, 619 F.2d 246, 248 (3d Cir.1980); 15 U.S.C. §§ 1640(a)). Courts impose such strict liability even where such violations are "merely technical" or "minor." *See, e.g., Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65, 67 (4th Cir.1983); *Jenkins v. Landmark Mortgage Corp.*, 696 F.Supp. 1089, 1095 (W.D.Va.1988); *Solis v. Fidelity Consumer Discount Co.*, 58 B.R. 983, 986 (E.D.Pa.1986). For example, failure to fill in the expiration date of the rescission form violates the TILA and entitles the borrower to retain the right to rescind the transaction. *See, e.g., Williamson v. Lafferty*, 698 F.2d 767, 768–69 (5th Cir.1983); *Mayfield v. Vanguard Savings & Loan Association*, 710 F.Supp. 143, 145–46 (E.D.Pa.1989); *Aquino v. Public Finance Consumer Discount Co.*, 606 F.Supp. 504, 507 (E.D.Pa.1985).

*New Maine Nat. Bank v. Gendron*, 780 F.Supp. 52, 57 (D.Me.1991).

■ This Court finds that Maria Rodrigues is a credible witness, and her version of the facts is adopted as what happened at the closing. She produced all of the documents given to her and her husband at the closing, and substituted their original papers for the copies submitted with the Joint Pre–Trial Order. The Plaintiffs' documents are consistent with Mrs. Rodrigueses' testimony and I find as a fact that any post-closing alteration of documents was not done by the Rodrigueses. Based on all of the evidence, I find that the Rodrigueses did not receive completed copies of the Notice of the Right to Cancel, as required, and that any presumption in favor of U.S. Bank that they did has been rebutted by the evidence. *See* 15 U.S.C. § 1635(c).[5] Therefore, the borrowers' right of rescission is extended for three years after the date of consummation of the transaction, until April 10, 2001. 15 U.S.C. § 1635(f);[6] *see also Lombardi v.*

---

4. Regulation Z is promulgated by the Federal Reserve Board, and because Congress has "specifically designated the Federal Reserve Board and staff as the primary source of interpretation and application of truth-in-lending law," there is no question as to the propriety of relying on Regulation Z to form this opinion. *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 567, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980).

5. "Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof." 15 U.S.C. § 1635(c).

6. An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor...

*Domestic Loan & Inv. Bank* (*In re Lombardi*), 195 B.R. 569, 571–72 (Bankr.D.R.I. 1996).

### B. U.S. Bank as Assignee

■ U.S. Bank argues that under 15 U.S.C. § 1641, the assignee of a HOEPA loan is not liable for the mistakes of the assignor. On the present record, this argument is completely without merit. Section 1641(d) makes clear that assignees of defective HOEPA loans have only one defense that at the time of assignment, the assignee was without notice that the loan in question was a HOEPA loan. There is no evidence that U.S. Bank was unaware of the HOEPA status here, and it would absolutely be U.S. Bank's burden to establish such lack of knowledge. Section 1641(d) states:

> Any person who purchases or is otherwise assigned a mortgage referred to in section 1602(aa) of this title shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage, unless the purchaser or assignee demonstrates, by a preponderance of the evidence, that a reasonable person exercising ordinary due diligence, could not determine, based on the documentation required by this subchapter, the itemization of the amount financed, and other disclosure of disbursements that the mortgage was a mortgage referred to in section 1602(aa) of this title. The preceding sentence does not affect rights of a consumer under subsection (a), (b), or (c) of this section or any other provision of this subchapter.

15 U.S.C. § 1641(d)(1).

The legislative history indicates Congress's intent to establish a strict liability

standard for assignees of such loans, as Senator Reigle, the sponsor of the HOEPA Senate amendments, said in his following explanation of the amendments:

> The bill eliminates "holder-in-due-course" protections for assignees of High Cost Mortgages. Assignees of High Cost Mortgages are subject to all claims and defenses, whether under Truth in Lending or other law, that could be raised against the original lender.

S.Rep. No. 103–169, at 29 (1993). Congress's intent could not be clearer: assignees of HOEPA mortgages are precluded from holder in due course protection, as well as the defense that the violations were not apparent on the face of the loan documents. The case law regarding the defenses available to an assignee of a HOEPA loan, while scarce, also appears to be quite uniform. A principal and well-reasoned case on the issue is *Murray v. The First Nat'l Bank* (*In re Murray*), 239 B.R. 728 (Bankr.E.D.Pa.1999). In *Murray*, Judge David Scholl wrote:

> Section 1641(d)(1) eliminates HDC [holder in due course] defenses entirely as to all claims asserted by the consumer under TILA or other laws, unless the assignee proves, by a preponderance of the evidence, that it could not determine that the loan was a HOEPA loan. This law is distinct from the provisions of §§ 1641(a) and (e) which do not impose TILA damages on assignees unless the violations are apparent on the face of the instruments.

*Murray* at 733. Judge Scholl reaffirmed this position in *Jackson v. U.S. Bank National Ass'n*, stating: "USB [United States Bank] does not deny that it knew that the mortgage which it holds arising out of the instant transaction was a HOEPA loan.

15 U.S.C. § 1635(f).

In such a loan that is the only defense available to an assignee." *Jackson v. U.S. Bank National Ass'n,* 245 B.R. 23, 33 (Bankr.E.D.Pa.2000). *See also, Vandenbroeck v. ContiMortgage Corp.,* 53 F.Supp.2d 965, 968 (W.D.Mich.1999); *Mason v. Fieldstone Mortgage Co.,* 2000 WL 1643589 (N.D.Ill.2000); Truth In Lending ¶ 12.06, at 3 (Robert A. Cook, et al. eds., 2000).

Here, as well, U.S. Bank, as the assignee of this HOEPA loan, is barred from asserting any defense other than that at the time of the assignment it could not reasonably determine that the mortgage was a loan covered by the HOEPA amendments. In this case, because U.S. Bank has stipulated that the loan "was subject to the Federal Truth in Lending Act, 15 U.S.C. § 1601 et seq. and the Home Ownership Equity Protection Act," it is precluded from even raising the defense. Joint Pre–Trial Order, ¶ 2.

## C. Sufficiency of the Notice of Recision

■ Filing a complaint against the Mortgagor serves as proper notice of recission of a TILA/HOEPA mortgage, if timely filed, and if it specifically addresses recission. *Eveland v. Star Bank, NA,* 976 F.Supp. 721, 726 (S.D.Ohio 1997) (*citing Taylor v. Domestic Remodeling, Inc.,* 97 F.3d 96, 100 (5th Cir.1996)). *See also Elliott v. ITT Corp.,* 764 F.Supp. 102, 105–6 (N.D.Ill.1991). In the case at hand, the Rodrigueses filed a complaint against U.S. Bank within three years from the date of the mortgage, and stated that they were "exercis[ing] their right of recission pursuant to 15 U.S.C. § 1639 and Regulation Z § 226.23(a)(3)." *Complaint for Declaratory Judgement Equitable Relief, Recission and Damages,* ¶ 11; *Amended Complaint,* ¶ 13; *Second Amended Complaint* ¶ 13. Clearly, the filing of this complaint was timely, and effectively notified U.S. Bank

that the Debtors were exercising their right of rescission.

Pursuant to Regulation Z, "[t]o exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or *other means of written communication."* 12 C.F.R. § 226.23(a)(2)(emphasis added).

Two reported cases say that debtors must first request rescission of the TILA/HOEPA loan before there is standing to bring a complaint against the creditor. *See Jefferson v. Security Pacific Fin. Servs.,* 162 F.R.D. 123, 126 (N.D.Ill.1995); *James v. Home Construction Co.,* 621 F.2d 727, 731 (5th Cir.1980). While both cases do make reference to 15 U.S.C. § 1635(b), I see no such requirement in my reading of that Section, and decline to follow either of these cases.

■ For the foregoing reasons: (1) the Rodrigueses' loan with U.S. Bank is rescinded as of July 17, 2000; (2) U.S. Bank's security interest in the Debtors' home is declared void; and (3) U.S. Bank is ORDERED to deliver to the Rodrigueses, within twenty (20) days, a release of its lien. *See* 15 U.S.C. § 1635(b). Also, the balance due U.S. Bank under the loan is reclassified as an unsecured claim that is subject to discharge in this bankruptcy case. *Id.; see also Williams v. Gelt Fin. Corp.,* 237 B.R. 590, 598–99 (E.D.Pa.1999).

■ Once the Court finds a violation of Section 1635, it must award damages. "[T]he statutory civil penalties must be imposed ... regardless of the ... belief that no actual damages resulted or that the violation is *de minimis." Zamarippa v. Cy's Car Sales, Inc.,* 674 F.2d 877, 879 (11th Cir.1982). The statutory damages under the TILA are a minimum of $200 and a maximum of $2,000. *See* 15 U.S.C. § 1640(a)(2)(A)(iii). In the instant case, there is no evidence of actual damages,

and considering the relief already awarded to the Debtors, including the fact that the Rodrigueses left the closing with approximately $3,000, I will order the minimum statutory penalty against U.S. Bank—$200.00. Finally, pursuant to 15 U.S.C. § 1640(a)(3), U.S. Bank is ORDERED to pay the reasonable attorney's fees and costs incurred by the Rodrigueses in the instant litigation. Within twenty days, Debtors' counsel should file an application for fees and expenses. If the parties cannot agree as to the reasonableness of the request, the Court will schedule a hearing on the application.

### D. The Prepayment Penalty Violates HOEPA 15 U.S.C. § 1639(c)(1)(A)

■ For possible appellate purposes and to complete the record in this proceeding, I will also rule on the pending HOEPA claim. The Rodrigueses' loan with First Plus includes this prepayment penalty:

> If I prepay my loan in full within the first year of the loan, I will pay a prepayment fee in an amount equal to two (2) percent of the unpaid principal balance of my loan at the time of my prepayment. I will not be obligated to pay a prepayment fee if I make a full prepayment at any time after the first anniversary of the date of my loan. In no event will such a charge be made if it violates state or federal law.

Note, Page 2, ¶ 6. The HOEPA amendments to the TILA provide that: "A mortgage referred to in section 1602(aa) of this title may not contain terms under which a consumer must pay a prepayment penalty for paying all or part of the principal before the date on which the principal is due." 15 U.S.C. § 1639(c)(1)(A). U.S. Bank's only response is counsel's representation that if the Rodrigueses sought to refinance during the first year of the loan,

U.S. Bank would not have enforced the prepayment penalty, and that an exception in Section 1639(c)(2)(B) should apply. The exception states that a prepayment penalty may be included if "the penalty applies only to a prepayment made with amounts obtained by the consumer by means other than a refinancing by the creditor under the mortgage, or an affiliate of that creditor." 15 U.S.C. § 1639(c)(2)(B). U.S. Bank presented no evidence on this point, counsel's unsupported (and likely unauthorized) statement cannot carry the day, and the Note includes no language which brings it within the exception.

For these reasons and for the reasons argued by the Plaintiffs in their Reply Memorandum in Support of Summary Judgment, which are adopted and incorporated herein by reference, I find and/or conclude that: (1) the prepayment penalty violates 15 U.S.C. § 1639(c)(1)(A); (2) none of the exceptions listed in 15 U.S.C. § 1639(c)(2) apply to the instant loan; and (3) inclusion of the prepayment penalty constitutes a violation of the TILA. *See* 15 U.S.C. § 1639(j). For this HOEPA/TILA violation, and for the same reasons, the same penalties discussed *infra* regarding U.S. Bank's failure to provide notice of the right of rescission are imposed, i.e., $200, plus reasonable attorney's fees and costs.

*Enter judgment consistent with this Opinion.*