OPINION OF THE COURT
Ralph P. Franco, J.
The defendants, Alton Walden and Patricia Walden, are seeking a restraining order preventing their eviction from their *462 home, reversal of a third-party sale of their house held on July 12, 2001, and vacatur of the default judgment against them dated November 22, 2000. In addition, they seek to interpose an answer alleging fraud of various federal and state real estate consumer protection acts.
The plaintiff, Bank of New York, is the assignee of Delta Funding Corporation, the same entity that reached a $12 million restitution agreement with New York State in 1999 for making predatory loans to elderly and minority New York residents. (Defendants’ affirmation in reply, exhibit C.)
The Waldens make the following allegations: In 1993 the Waldens found themselves in some financial difficulty. Mr. Walden had been disabled and Mrs. Walden was employed as a nurse’s assistant who, at the time the loan was made, was earning approximately $18,000 a year. They responded to a newspaper ad by Guaranteed Funding and paid a refundable fee of $7,500 up front to procure a loan. The Waldens’ intent was to borrow about $92,000 to pay off a loan on a rental property they owned, $5,500 in medical bills, and $6,000 in back taxes for a total of $103,500. The mortgage was to be on their rental property only.
Instead, the Waldens found themselves getting first an “emergency” short term loan from private investors and then a long term mortgage with both the rental property and their residence as collateral. Delta Funding had arranged for the Waldens to borrow $180,000 and had charged them $52,178 in fees and closing costs. The interest rate was 12.99%. It was a balloon note requiring monthly principal and interest payments of $1,989.75 for 15 years and a balloon payment of $159,334.22. (Defendants’ OTC, exhibit C.)
It is further alleged that these transactions involving three different lenders, Guaranteed Funding Corp., Cross County Funding and Coastal Capitol Corp., generated $52,000 in fees in less than two months while effectively doubling defendants’ mortgage and eventually forcing them into bankruptcy.
Predictably, when the Waldens began to fall behind in their payments, a protracted legal struggle began of which this litigation is just a part. The bank instituted foreclosure proceedings as far back as 1995. The defendants defaulted and judgment was entered. However, the defendants filed a bankruptcy proceeding to stop the sale. This evidently happened five times over the next three years. (Plaintiff’s motion para 9.) Although the Waldens at times appeared pro se, they were also represented by counsel in some of these proceedings. The foreclosure *463 sale was ultimately held on July 12, 2001. Eviction proceedings were then brought in Nassau District Court in which the Waldens signed a stipulation of settlement agreeing to vacate their home on April 30, 2002. (Plaintiff’s exhibit B.)
It was at this point that the instant motion, seeking to vacate the default judgment, reverse the sale and requesting leave to interpose an answer and to rescind the mortgage, was filed. The defendants allege that they have a reasonable excuse for delay and meritorious defenses, namely, that the plaintiff and/or its predecessor lenders violated defendants’ rights under the Truth in Lending Act (TILA), the Real Estate Settlement Procedures Act, the Home Ownership and Equity Protection Act of 1994 (HOEPA), the regulations thereunder and the General Business Law.
The Waldens are part of a class action suit which is also currently pending in the Eastern District of New York (Lopez v Delta Funding Corp., CV-98-7204).
The plaintiff attempts to portray the defendants as conniving, manipulative court-wise litigants bent on abusing the legal system. Rather, there is ample evidence that the practices of Delta and their cohorts were fraudulent, misleading and possibly criminal. The defendants are typical of the people preyed upon: working poor, minority homeowners with little or no experience in financial matters. (See exhibit B to defendants’ motion.)
In support of their motion for vacating the default judgment, the defendants state that they were expressly told by representatives of Delta Funding that the action was not proceeding and that they were attempting to rectify the accounting errors. The Waldens allege they were essentially lulled into a false sense of security by Delta.
Of even more importance is the fact that mortgages were placed on both defendants’ properties without their knowledge or understanding. Not the slightest attempt at compliance with applicable regulations was made by the lenders. No Truth in Lending disclosures or copies of any of the loan documents signed at the closing were given to the defendants. Thus, plaintiffs did not comply with TILA and Regulation Z. (12 CFR 226,1 et seq.) The defendants charge that the loan documents were prepared and executed in such a way as to conceal the fact that both houses were encumbered with mortgages.
It also appears that the lenders violated HOEPA (15 USC § 1639) and Regulation Z in that they extended credit to the *464 defendants based on their collateral rather than considering their income. Mr. Walden has been disabled since 1984 and survives on Social Security while his wife earns a modest income as a health care worker. Adherence to underwriting standards may have prevented such a large loan being made to these borrowers.
The lenders also violated Regulation Z (12 CFR 226.32), which prohibits lenders from entering into a balloon payment note with borrowers on high-interest, high-fee loans. The loan terms described above certainly fall into this category.
The plaintiff argues that the three-year statute of limitations established by 15 USC § 1635 (a) (1) of the Truth in Lending Act and Regulation Z should apply. The plaintiff relies primarily on the case of Beach v Ocwen Fed. Bank (523 US 410). This case dealt with “whether a borrower may assert [the] right to rescind as an affirmative defense in a collection action brought by the lender more than three years after the consummation of the transaction.” (Id. at 411-412 [emphasis added].) However, defense counsel argues that on the facts of the case that the transaction was not consummated due to the numerous flagrant violations of the lender and therefore the statute of limitations is tolled.
There is ample precedent holding that the Truth in Lending Act is a “strict liability” statute in that even the slightest technical violation can give rise to the right to rescind. For example, in Rodash v AIB Mtge. Co. (16 F3d 1142, 1144-1145), the court held:
“Congress designed TILA to promote the informed use and awareness of the cost of credit by consumers. Shroder v. Suburban Coastal Corp., 729 F.2d 1371, 1380 (11th Cir. 1984). The Act ensures a meaningful disclosure of credit terms to enable consumers to compare readily the various credit terms available in the marketplace. Id. Congress intended the statute to create a system of private attorneys general to aid its enforcement; thus, to further its remedial purpose, we liberally construe its language in favor of the consumer. McGowan v. King, Inc., 569 F.2d 845, 848 (5th Cir. 1978). Accord Smith v. Fidelity Consumer Discount Co., 898 F.2d 896, 898 (3rd Cir. 1990). Additionally, creditors must strictly comply with TILA’s requirements. Shroder, 729 F.2d at 1380 (The creditor’s disclosures must be in ‘the proper technical form and in *465 the proper locations on the contract, as mandated by the requirements of TILA and Regulation Z. Liability will flow from even minute deviations from requirements.’).”
Similarly, in Curry v Fidelity Consumer Discount Co. (656 F Supp 1129, 1131), the court held that: “The purposes of the Act are further demonstrated through a standard of strict liability against creditors who fail to make mandated disclosure. 15 U.S.C. § 1640(a).”
In Jenkins v Landmark Mtge. Corp. of Va. (696 F Supp 1089, 1092), the Virginia court concluded:
“The Protective posture of this legislation is * * * reflected in the legal standard to which lenders are held. * * * Technical defects in the disclosure process * * * are matters of which a court must take cognizance. * * * Such a strict standard of interpretation may well be more Draconian than Solo-monic, especially in its effect on lenders. But there can be no doubt that the resemblance in TILA to the regime of Draco was intentional.”
Thus, the legislative intent is crystal clear: Protection of the public from sharp lending practices. It is important to note that the plaintiffs opposition papers do not deny that it failed to make any of the required disclosures to the defendants.
Another theory, even assuming that despite the egregious transgressions of the lender the transaction can be held valid, is the doctrine of equitable tolling. This doctrine holds that a statute of limitations should not run against a plaintiff who is unaware of the cause of action. See Mucha v Derwinski (1991 WL 46534, *3, 1991 US Dist LEXIS 13190, *7 [WD NY]), which held:
“The doctrine of equitable tolling is derived from the belief that a statute of limitation should not run against a plaintiff who is unaware of his cause of action. Cerbone v. Intern. Ladies’ Garment Workers’ Union (‘Cerbone’), 768 F.2d 45, 48 (2d Cir. 1985). While originally developed in the context of actions based on fraud, the doctrine has been applied in situations where the defendant has engaged in conduct that concealed from the plaintiff the existence of the cause of action. Ibid. Thus, as a ‘matter of fairness,’ a court may toll the running of the applicable limitation period where an employee has *466 been ‘misled by his employer’ or where some ‘extraordinary’ circumstance has prevented him from exercising his rights. Cerbone, supra, at 49; Miller v. Intern. Tel. & Tel. Corp., 755 F.2d 20, 24 (2d Cir.) cert, denied, 474 U.S. 851 (1985); see also Dillman v. Combustion Engineering, Inc., 784 F.2d 57, 60 (2d Cir. 1986).”
Motion by attorney for defendants Walden for an order restraining the execution of the eviction proceeding commenced under Index No. 639/02, in District Court, County of Nassau, pending the final determination of this action, is granted.
Defendants are granted leave to interpose a verified answer within 30 days, and may plead as affirmative defenses and/or counterclaims the balance of the relief requested, and not specifically denied in the within omnibus motion.
Plaintiffs cross motion, sequence No. 3, for attorneys’ fees and sanctions is denied.
Failure of all counsel to appear in my courtroom, Part 12, on October 11, 2002, at 9:00 a.m., to enter into a preliminary conference order (22 NYCRR 202.12), may be deemed a default within the meaning of 22 NYCRR 202.27.
The within conference may not be adjourned without prior court consent.